Ferguson *v.* Clifford.

FERGUSON *v.* CLIFFORD.

The certificate of the proper recording officer is competent evidence of the fact that the instrument to which it is attached has been recorded, as therein certified.

A mortgage of personal property, duly executed and recorded, according to the laws of the country of its execution, is effectual to hold the prop-

Ferguson *v.* Clifford.

erty conveyed by it, when subsequently removed to this State, although not executed conformably to our laws, and not recorded here.

Evidence that the mortgagor owed the debt, and that the note secured by the mortgage was given upon an adjustment of mutual preëxisting claims between the mortgagor and mortgagee, is competent to be weighed by the jury, as tending to show a full and sufficient consideration for a mortgage.

Foreign laws are to be proved as facts, by evidence addressed to the court, and not to the jury.

In Maine, as in New-Hampshire, where there is no stipulation to the contrary, the execution of a personal mortgage vests the title of the mortgaged property in the mortgagee, whether the mortgage debt is due or not.

An attachment of mortgaged property, followed by a refusal to give it up on demand made, and exhibition of the mortgage and mortgage debt, is competent and sufficient evidence of conversion, whether at the time of the demand the property be actually in the possession of the officer making the attachment or not.

Remedies are regulated exclusively by the laws of the place where they are prosecuted, and property mortgaged in Maine and subsequently brought into this State, can only be attached and holden here agreeably to the provisions of our laws.

Delivery, without payment of the price, or evidence of some understanding or agreement to give credit, is not conclusive evidence of a perfected sale.

Evidence of the price stipulated to be paid for an article, by the terms of a contract of sale, deliberately and in good faith entered into, and so far completed that nothing remained to be done to pass the property but the payment of the purchase money, is competent to be considered on the question of the value of such article.

Trover, for a church organ, valued at $600. The writ bore date the 6th day of December, 1856. The defendant pleaded the general issue, with a brief statement, that he was a deputy of the sheriff of the county of Rockingham, and took the organ upon a writ sued out by one Lane against one Hayes, upon a debt long due from Hayes to Lane, and that Hayes was the owner of the organ when attached.

It appeared at the trial that Hayes, being resident in Portland, in the State of Maine, and being owner of the

organ, on the 29th day of July, 1856, mortgaged it to the plaintiff, who was his brother-in-law, to secure a note for $350, payable in six months from that date. The mortgage was executed in conformity to the laws of Maine, and was recorded at Portland, but the mortgage was never sworn to by the parties, nor recorded in New-Hampshire. The execution of the mortgage was admitted.

To prove that it was recorded at Portland, the plaintiff offered in evidence an office-copy from the records of the city-clerk of Portland, to which the defendant excepted.

The plaintiff also gave in evidence the following memorandum on the back of said mortgage : "Portland ss. Received July 30, 1856, at 11.35, A. M., and recorded vol. 10, page 251. Attest, James Merrill, city-clerk."

A copy of said memorandum was also on the margin of said office-copy, the whole of which was thus attested : "City of Portland, City-Clerk's Office, October 6, 1857. A true copy, as of record in this office. Attest : William Boyd, city-clerk."

The plaintiff also gave in evidence the deposition of James Merrill, who testified that he was elected city-clerk of Portland in April, 1856, and continued city-clerk one year, and that on the 30th day of July, 1856, he recorded a mortgage from John Hayes to John Ferguson, of a church organ, purporting to secure a promissory note given by said Hayes to said Ferguson, for $350, in six months, with interest, and that said mortgage was marked the first mortgage, and was dated July 29, 1856. Also the testimony of James O'Donnel, a resident of Portland, and counsellor-at-law, who wrote said mortgage ; that said Merrill, at the time of recording said mortgage, was the acting city-clerk of said Portland, and that said Boyd was the acting city-clerk of said Portland at the date of the certificate upon said copy ; that he himself carried said mortgage to the office of the city-clerk, and saw the memorandum made upon the back of it, and had since seen a

Ferguson *v.* Clifford.

similar memorandum entered upon the margin of the record of said mortgage.

The mortgage contained at the end the following clause: "Provided, also, that it shall and may be lawful for said Hayes to continue in possession of said organ, without denial or interruption by said Hayes, until demand is made for possession of the same by said Ferguson." James O'Donnell, Esq., a counsellor-at-law, resident in Portland, and a witness for the plaintiff, testified that, by the laws of Maine, as determined by the decisions of the Supreme Court of that State, a mortgagor of personal property is entitled to retain possession of the same, until the debt described in the mortgage becomes due; and that the mortgagee can maintain no action for possession until the note becomes due, without a special stipulation in the mortgage to that effect; but this testimony was given in subsequently to, and partly in explanation of, his testimony on cross-examination, touching a subsequent mortgage of the same organ by Hayes to himself.

To prove the value of the organ, the plaintiff offered in evidence three letters, addressed by one William F. Lawrence to one John Hayes. The first is dated Epping, November 8, 1856, and is as follows:

Dear Sir, — The Methodist meeting-house in Epping is old and out of repair. The Society have this season worshipped in the Universalist meeting-house, which is in good repair and order. The Universalists have not nor do not use it for years, and have consented for the Methodists to use it and keep it in repair. They probably will never want it for regular preaching. Many of the owners attend Methodist preaching. But it will need some alterations to receive an organ of the size of yours; and if they will allow such alterations, I have the promise of means to pay you your terms, even $500, and expense of freight. I think you had better agree to take your pay as soon as the organ is set up in good order and tune, in the Universalist

meeting-house, and you pay the freight. If so, and as soon as all is completed here, I will address you again. I have heard a favorable report of your organ, and as it is coming on cold weather it is desirable to have it, if it come here, as soon as possible. You would have to start it so as to set it up during the week. Get it at the depot on Saturday, and take it from the depot Monday, and complete putting it up during the week. I await your answer, and remain yours &c., W. F. LAWRENCE.

N. B. — I cannot promise you that any expenses attending bringing and fitting it up will be paid. It is usual for builders to set them up free of all expense. Had you not better have $500 for it when all set up, than lose the sale.

W. F. L.

The second letter was dated Epping, November 13, 1856, and is as follows :

Mr. JOHN HAYES, PORTLAND.

Dear Sir, — Yours of 11th is received this noon, since our mail from the east has left. You wish an early answer, as other parties are negotiating for the organ, and I therefore answer you per express, this afternoon, that it is desirable to get the organ up in time, &c., as soon as a week from next Sabbath ; and as we are prepared to take it, we will comply with your terms, and want it as soon as possible. I shall set workmen to prepare the gallery next Monday, and shall expect you and the organ, so as to complete setting it up next week.

In haste, &c., W. F. LAWRENCE.

N. B. — See, per articles in inclosed paper, concert next Tuesday evening. I shall go to Exeter Sabbath evening, and remain until close of concert Tuesday evening, and return home Tuesday evening, and render you any assistance I can. W. F. L.

The third letter bears date Epping, November 20, 1856, and is as follows :

Dear Sir, — I returned last evening, after an absence of

several days, and anticipated seeing your organ almost up, but have neither heard from you or the organ. We wanted it up previous to Thanksgiving very much, (next Thursday, 27th.) I wrote you, accepting your offer, and look for it each train from the east. Please hurry it along as early as possible. We must use it Thanksgiving day.

Yours, &c., W. F. LAWRENCE.

· P. S. — The house is all prepared to receive it, and the weather is auspicious, and the individuals who buy and pay for this for the Society are calling on me to hurry the organ along. Let me see it, or hear when it will be here.

W. F. L.

N. B. — I suppose it was not all finished, or some alterations which I wish you may do here, as we want it before 27th.

To the reading of these letters the defendant excepted. No letter from Hayes to Lawrence was offered in evidence, nor was Lawrence examined as a witness, though it was shown, that he was, at the time of the trial, a resident in Epping.

John Hayes, in a deposition offered by the plaintiff, says: "I sold the organ to a party in Epping, N. H., W. Lawrence, by letter, and I accompanied the organ to Epping, and put it up in the Universalist church in Epping, in good playing order." And it appeared that the plaintiff, on a certain occasion in Portland, authorized Hayes to sell the organ to Lawrence for a given price, then and there, at the time stated. No other evidence was offered in regard to the sale or delivery of the organ.

Hayes further testified that the defendant attached the organ on a writ in favor of Lane, and took charge of the organ, and took it from him entirely, and that he received nothing for the organ, but went home, having notified the officer of the mortgage, and demanded the organ of him, and having also notified the officer that if it was paid for

to him, (Hayes) there would be no further difficulty, as he had authority to sell it.

The defendant offered evidence to show that the organ was placed in the Universalist meeting-house by Hayes, and has ever since remained there, as Hayes left it; that the defendant never took any manual possession of the organ, and did not remain in the meeting-house, or have any keeper there after the alleged attachment, but that the meeting-house was used for religious worship, as usual, and the organ was played upon by the organist of the Society, for several Sundays after it was set up. It did not appear, other than from said letters of said Lawrence, that said Society or any of the members of it had taken any action or part in relation to the purchase of said organ. The defendant made the following return upon Lane's writ: "Rockingham ss., November 28, 1856. I attached, as the property of the within named John Hayes, one organ, and on the same day I gave to the within named John Hayes a summons, in the form prescribed by law, with my name and office indorsed by me thereon. B. S. Clifford, Deputy-Sheriff." Said Hayes testified in his deposition that at the time the defendant attached and took possession of the organ, he demanded the organ of the defendant, and he refused to give it up.

At some time between the alleged attachment and the date of the plaintiff's writ, the attorney of the plaintiff exhibited the note and mortgage of the plaintiff to the defendant, and on behalf of the plaintiff demanded the organ of the defendant, at his house in Epping, in the name of the plaintiff, but the defendant refused to deliver it.

The defendant contended that the plaintiff's own evidence showed that the organ had been sold and delivered to Lawrence before the alleged attachment; but the court left it to the jury to find upon said evidence whether there had been a sale and delivery.

The defendant offered evidence to show that said Hayes was indebted to Lane, upon a promissory note for $384.93, dated May 24, 1855. Lane, on the 26th day of November, 1856, sued out his writ of attachment in this court on said note against Hayes, and placed it in the hands of the defendant, who was a deputy of the sheriff, for service, and that the defendant attached the organ on said writ, which is the seizure and conversion complained of.

Hayes being asked by the plaintiff whether he owed the plaintiff the amount of money named in the mortgage note, at the time the mortgage was given, testified as follows: "At the time, I owed him that amount;" and on being asked whether he had paid any thing on that note and mortgage, since, said he had not. And said O'Donnell testified that prior to the giving of said mortgage the plaintiff left demands in his office against said Hayes for collection; that, after notice from him, Hayes met the plaintiff at his office, and a settlement was there made between them; that there were claims on both sides, and after some dispute about certain items, the amount of Hayes' claim was deducted from that of the plaintiff, leaving a balance of $350 due the plaintiff, for which Hayes gave the note, secured by mortgage of the organ. No other evidence was offered to show the consideration of the mortgage note.

The defendant contended that this was not sufficient evidence of the consideration of said note, and asked the court to instruct the jury that upon this evidence the plaintiff was not entitled to recover; but the court left it to the jury to find, on this evidence, whether there was a sufficient consideration for the note and mortgage.

The defendant contended that the plaintiff's mortgage debt did not become due till January 30, 1857, and that, upon his own showing, the plaintiff was not entitled to possession of the organ, or to demand or sue for the same until that time; and requested the court to instruct the

Ferguson *v*. Clifford.

jury accordingly; but the court instructed the jury that the plaintiff might maintain his action, though commenced before the note became due.

It did not appear that the defendant had any actual possession of the organ, at or after said demand; and the defendant contended, and asked the court to charge the jury, that there was no evidence to show a conversion of the organ by the defendant, at or after the time of said demand; but the court declined so to instruct the jury, but left it to them to find a conversion on said evidence.

The defendant offered in evidence the Revised Statutes of Maine, chap. 117, sec. 40, which provides that a creditor may have the right of a mortgagor in personal property, attached, seized, and sold on the execution, as in other cases, subject to the rights and interest of the mortgagee, without paying or tendering payment of the debt due to the mortgagee; and contended that the defendant was authorized to make the alleged attachment of this organ, and hold the same, after demand made, by reason of said statute; but the court instructed the jury that if the plaintiff's mortgage were made for a sufficient consideration — an actual indebtedness of Hayes to him for that amount — and the organ had not been sold and delivered by Hayes with the authority and assent of the plaintiff, the plaintiff was entitled to the possession of it, as against the defendant, upon demand made, and an exhibition or notice of his mortgage; and that if the defendant attached the organ on the 28th of November, 1856, the same not having been sold and delivered by Hayes, as aforesaid, and retained the possession or custody thereof, until the plaintiff gave notice of his mortgage, and demanded the organ of him, and thereupon refused to give it up, such demand and refusal were evidence from which they might find a conversion, such as to hold the defendant liable in this action.

The jury having returned a verdict for the plaintiff, the defendant moved that the same be set aside and a new

Ferguson *v.* Clifford.

trial granted, for the alleged improper admission of evidence, and supposed errors in the aforesaid rulings and instructions of the court.

*Hatch* and *Frink*, for the defendant.

*William B. Small*, for the plaintiff.

FOWLER, J.   The evidence offered on the trial to prove the record of the mortgage in Portland, was competent, and properly received.   Official registers, or books kept by persons in public office, in which they are required to write down particular transactions, or to enrol or record particular contracts or instruments, are generally admissible in evidence, notwithstanding their authenticity is not confirmed by those usual and ordinary tests of truth—the obligation of an oath and the power of cross examining the persons on whose authority their truth and authenticity may depend.   This has been said to be, because they are required by law to be kept, because the entries in them are of public interest and notoriety, and because they are made under the sanction of an oath of office, or in the discharge of an official duty.   Books, or records of this character, being themselves evidence, and being usually restricted to a particular custody, their contents may be proved by an immediate copy.   When the books themselves are produced, accompanied by evidence that they come from the proper depository, they are received as evidence, without further attestation.   Where the proof is by copy, an examined copy, duly made and sworn to by any competent witness, is always admissible.   Whether a copy, certified by the officer making the record, or having the legal custody of the book or document—he not being specially appointed by law to furnish copies—is admissible, has been doubted in many cases, but the weight of authority seems to have established the rule, that a copy, given

by a public officer whose duty it is to keep the original record, ought to be received in evidence. 1 Greenleaf's Ev., secs. 483, 484, 498, 507 ; *Burnham* v. *Wood,* 8 N. H. 334 ; *Woods* v. *Banks,* 14 N. H. 101 ; *United States* v. *Peechman,* 7 Peters 85 ; *Oakes* v. *Hill,* 14 Pick. 448 ; *United States* v. *Johns,* 5 Dallas 415 ; *Forsaith* v. *Clark,* 21 N. H. (1 Foster) 409 ; *Pickard* v. *Bailey,* 26 N. H. (6 Foster) 152.

Both the parties resided, and, at the date of the conveyance thereof, the organ mortgaged was located, in Portland, Maine, and no question was made upon the trial that the city-clerk of Portland was the proper person to record and give copies of the mortgage. When, therefore, it had been shown, by evidence to which no exception was taken, that the person making the certificate of record upon the back of the original mortgage, was at the date thereof city-clerk of Portland, the certificate was itself *primâ facie* evidence that the deed was recorded, as therein certified. The same is true of the copy, after it had been shown in the same manner that the person certifying it was, at the date of his certificate, city-clerk of Portland. *Hastings* v. *Blue Hill Turnpike,* 9 Pick. 83 ; *Banks* v. *Woods,* 14 N. H. 109 ; *Fuller* v. *Rounceville,* 31 N. H. (11 Foster) 512.

The mortgage in this case, having been executed and recorded agreeably to the requirements of the laws of Maine, where the parties to it resided at the time of its execution, and where the property was then located, was valid and effectual to pass and hold the property in that State. The general rule that the law of the place of the contract is to govern as to its nature, validity, construction and effect, has always been recognized in this State, and must be applied to this mortgage. *Stevens* v. *Norris,* 30 N. H. (10 Foster) 466 ; *Smith* v. *Godfrey,* 28 N. H. (8 Foster) 379, and authorities there collected. The law of Maine not requiring any oath by the parties to the existence and validity of the debt mentioned in the condition of the mortgage, and secured by it, the mortgage was valid there

without such oath. It will be enforced here, although not recorded in this State, as a matter of comity, because it was valid by the laws of the place of its execution, and continued in force under those laws, until the property on which it operated was brought into this jurisdiction. *Smith* v. *Godfrey*, 28 N. H. (8 Foster) 382; Story's Conflict of Laws, sec. 244; 2 Kent's Com. 458; *Sessions* v. *Little*, 9 N. H. 271; *Offut* v. *Flagg*, 10 N. H. 49, 50, 51; *Smith* v. *Moore & al.*, 11 N. H. 55.

The defendant, having shown that he took the organ by virtue of a writ founded upon a debt of the mortgagor, existing at and prior to the date of the execution of the mortgage, it was incumbent upon the ·plaintiff to prove by competent evidence that the mortgage was made for a good, valuable and sufficient consideration. The acknowledgement of a consideration received, contained in the deed itself, was no evidence against the defendant. *Kimball* v. *Fenner*, 12 N. H. 248.

The testimony of Hayes, the debtor, was that he owed the plaintiff the amount of the note, at the time the note and mortgage were made, and had paid nothing since. To this was added that of O'Donnell, that, prior to the date of the mortgage, the plaintiff left in his office for collection various claims against Hayes, of which he gave him notice; and that subsequently the parties met at his office, and, after some dispute about items, the note secured by the mortgage was finally given, as evidence of the amount actually due and owing from Hayes to the plaintiff, upon an adjustment of the mutual demands previously subsisting between them. If this did not amount to the full and satisfactory proof required in a conflict of claims between two creditors for payment of their respective debts out of the same property of their debtor, it was undoubtedly evidence, competent to be weighed by the jury, and from which they might well find that there

existed a full and sufficient consideration for the plaintiff's mortgage. *Aiken* v. *Kilbourne,* 27 Me. (14 Shepley) 252.

It is a sufficient answer to the objection, that the plaintiff's own evidence showed that, by the laws of Maine, controlling the contract of mortgage, the suit was prematurely brought, to say that this was purely a question of fact for the determination of the court. Foreign laws are to be proved as facts, by evidence addressed to the court, and not to the jury. If the testimony of O'Donnell related to the statutes of Maine, it was entirely incompetent to prove them. If it referred to the unwritten laws, judicial decisions, customs or usages of that State, its weight and credibility, as well as its applicability to the case in hand, were matters for the consideration of the court; and the court having found, as matter of fact, that no such rule of law governing the contract of the parties existed in Maine, and so instructed the jury, there is no occasion for disturbing the verdict, unless it be shown that the court were wrong in the conclusion at which they arrived. Story's Conflict of Laws, secs. 638, 639, 640, 641, 642; 1 Greenleaf's Ev., secs. 486, 487, 488; *Pickard* v. *Bailey,* 26 N. H. (6 Foster) 152.

No attempt has been made in the defendant's argument to show that there exists in Maine any statute, judicial decision, or other law, custom or usage, prohibiting the mortgagee from maintaining an action for the wrongful conversion of personal property mortgaged to him, before the maturity of the note to secure the payment of which the mortgage is given. On the contrary, the authorities cited by the plaintiff, and many others, seem to be conclusive that no such law exists in that State. O'Donnell must then have been entirely mistaken in his testimony, or have perverted a decision, that where a personal mortgage provides for the retention of the possession of the mortgaged property by the mortgagor for a given time, the mortgagee cannot maintain replevin therefor before the

Ferguson *v.* Clifford.

expiration of the stipulated period, into one holding that where the note secured by such mortgage is payable on time, the mortgagee is remediless as to any injury to the mortgaged property before the maturity of his note. The decisions in Maine are entirely clear, that there, as in this State, where no agreement to the contrary exists, the execution of the mortgage vests the title and right to the possession of personal property in the mortgagee; and such was the finding of the court below. *Pickard* v. *Low,* 3 Shepley 48; *Ingraham* v. *Martin,* 3 Shepley 373; *Paul* v. *Hayford,* 22 Me. 234; *Welch* v. *Whittemore,* 25 Me. 86; *Whitney* v. *Lowell,* 33 Me. 318.

In the present case, the right of possession, by the provisions of the mortgage, was not in the mortgagee until actual demand made. But there is nothing to indicate that demand might not be made as well before as after the maturity of the note, or condition broken. In the absence of any provision on this subject, the mortgagee would have had the right to immediate possession, with or without demand, before as well as after the condition broken. The provision in its terms gives to the mortgagee the legal possession so long and so long only as the mortgagee refrains from demanding it; and the effect of it is merely to restrain the mortgagee from taking possession, as he otherwise might lawfully do, until he should make actual demand of the organ. When, therefore, the attorney of the plaintiff, in his name and by his authority, before the commencement of this suit, demanded the organ of the defendant, the terms of the provision were complied with, and the right to possession vested in the plaintiff under the mortgage.

It is contended that there was no sufficient evidence of any conversion of the organ by the defendant, since the attachment and sale of Hayes' equitable interest in the organ, as mortgagor, were authorized by the Revised Statutes of Maine, chap. 117, sec. 40, and there was no

removal of the property from the custody of the plaintiff's agent, or other interference with his right of possession, after demand made by his attorney therefor.

That the rights of parties, under a contract for the sale or conveyance of property, are to be tested by the laws of the government where the sale or conveyance was made, as a general proposition is unquestionable. *Smith* v. *Godfrey*, 28 N. H. (8 Foster) 379, and cases cited. The validity and effect of the mortgage in this case, therefore, in all inquiries as to the rights of the parties under it, are to be determined by the laws of Maine. But, while the *lex loci* thus governs in all questions touching the contract, the rights of parties in pursuing remedies upon it, or in enforcing claims growing out of it, or other claims against its subject matter, are to be determined by the laws of the country where those rights are sought to be enforced. What property is liable to attachment, and what are the proper modes of proceeding in making the attachment upon process within this jurisdiction, are to be determined entirely by our laws. Remedies are regulated exclusively by the law of the place where they are prosecuted.

The attachment of the organ by the defendant, as the property of the mortgagor, was rightful under the laws of this State. By the express provisions of chap. 184, secs. 15 and 16 of the Revised Statutes, personal property mortgaged may be attached as the property of the general owner, and may be held, without payment or tender of the mortgage debt, until the mortgagee shall, upon demand made therefor by the officer or attaching creditor, render an account under oath of the amount due upon the mortgage debt. If, therefore, the attachment by the defendant had been followed by a demand upon the plaintiff for such an account, neither the proceedings of the defendant in making the attachment, nor his refusal to deliver up the organ upon demand of the plaintiff's attorney, would have constituted any conversion or evidence of conver-

sion, until the account had been rendered within the time limited by the statute. It would be no conversion, or evidence of a conversion, for an officer to refuse, upon demand made by the mortgagee, to surrender property which he had taken into his custody by attachment, if, having demanded such account, he were awaiting the rendition thereof by the mortgagee during the fifteen days given him by the statute for that purpose. But if, the attachment having been made, the mortgagee demand the property, and the officer, without making, or having made, or giving notice of any intention to make, a counter demand upon him for such account, refuse to surrender the property, such demand and refusal constitute evidence of a conversion. Nor is it necessary in such case to show that after the demand there was any intermeddling with the property, beyond that imported in the previous attachment. A conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff under a claim of title inconsistent with his own. By the attachment, the defendant assumed control and authority over the organ, in exclusion or defiance of the plaintiff's right. Hayes testified that he took it into his actual possession. By the refusal to deliver, on demand made, he withheld the possession under a claim of title, which was, under the circumstances of the case, inconsistent with the plaintiff's. Their acts constituted a direct conversion of the property. *White* v. *Phelps*, 12 N. H. 382; *Hyde* v. *Noble*, 13 N. H. 494; *Flanders* v. *Colby*, 28 N. H. (8 Foster) 34; *Bartlett* v. *Hoyt*, 33 N. H. 151. Nor was any demand necessary, but for the provision of the mortgage. It was only requisite to enable the plaintiff to avail himself of the defendant's wrongful interference with the property, as the ground of

action, which he could not do so long as he acquiesced therein without actual demand of the organ. *Scott* v. *Whittemore*, 27 N. H. (7 Foster) 309; *Hill* v. *Wiggin*, 31 N. H. (11 Foster) 292.

The evidence showed an attachment on the 28th of November. The suit was commenced on the 6th of December following. There was no demand made, attempted, or even contemplated by the creditor or officer, upon the plaintiff for an account of the amount due upon the mortgage debt. The defendant, and the creditor for whom he acted, denied entirely the validity of the plaintiff's mortgage. They insisted that it was fraudulent and void as to creditors, and that, notwithstanding its execution, the mortgagor continued the actual and absolute owner of the organ. Under these circumstances, it is idle to contend that the defendant was holding the organ under the statute of Maine, had its provisions been such as the defendant contends they were, and had it been in force in this State. Nor, upon the uncontroverted evidence of a demand and refusal, can there be any doubt of the competency and sufficiency of the proof of a conversion.

It is in no way material that the organ remained in the church, and was not actually in the possession of the defendant at the time of the demand by the plaintiff's attorney. The defendant, having taken the organ from the control of Hayes, attached, and returned it as attached on the writ, and refused to deliver it up, or relinquish his claim upon it, on demand made and an exhibition to him of the mortgage and mortgage debt, cannot escape liability by showing that he had not at the moment of the demand the actual control or personal custody of the instrument. It was legally in his possession; he had taken it from Hayes, never returned it, and even then refused to give it up.

Admitting the evidence to have shown a delivery of the organ to Lawrence by Hayes, under the contract for its

sale, we think it was properly left to the jury to find, upon all the evidence before them, whether the sale to Lawrence was completed so as to pass the property to him. The price not having been paid, and no evidence being offered tending to show any understanding or agreement that credit was to be given, the court would not have been justified in holding, as a matter of law, that the sale was completed so as to pass the property. The general rule in such cases is, that the price must be paid before the property will pass, although conditional delivery may occur. If delivery take place, where payment is expected simultaneously therewith, it is in law made upon the condition precedent, that the price shall forthwith be paid. If this condition be not performed, the delivery is inoperative to pass the title to the property, and it may be instantly reclaimed by the vendor. Delivery, without any thing being said, is not necessarily absolute. It is evidence of a waiver, and, with other circumstances, may be sufficient to authorize a jury to find a waiver of the precedent condition of payment of the stipulated price. 1 Parsons on Contracts 448; 2 Kent's Com. 497; Chitty on Contracts 375, a; *Luey* v. *Bundy*, 9 N. H. 302; *Clark* v. *Draper*, 19 N. H. 419.

As, therefore, upon the reported evidence in the case, the court could not properly have ruled, as a matter of law, that the sale to Lawrence was perfected so as to pass the property to him, it is not for the defendant to complain that it was left for the jury to determine, under suitable instructions, whether there was evidence authorizing them to find, as matter of fact, that the sale was complete. It gave him an opportunity to discuss the evidence, and its possible tendencies, before a tribunal not accustomed to sanction any proceeding calculated to hinder, delay or prevent creditors from obtaining payment of their debts out of the property of their debtors. The jury having found that the sale was not completed, that finding is conclusive.

The only remaining objection relates to the admissibility of the letters of Lawrence as competent evidence on the question of value. Those letters show an offer by Hayes to sell the organ for a specified sum, an acceptance of that offer by Lawrence, and the assent of Hayes to the acceptance. Other evidence showed Hayes to have been authorized by the plaintiff to sell the organ, as his agent, for the price agreed upon, the transportation of the instrument from Portland to Epping, in pursuance of the contract between Hayes and Lawrence, and its being put in order for use at the latter place, in further pursuance of the same contract. In connection with the other evidence in the case, the letters show an authorized offer to sell, an acceptance of that offer, constituting together a valid contract of sale, and a ratification of that contract by the vendor, by his performance of every thing necessary to be done on his part, except formally to pass over the property by delivery on the receipt of the purchase money. Indeed, it may well be said that nothing remained to be done to perfect the sale, except the payment of the purchase money. Under these circumstances, had the price agreed to be paid any legitimate tendency to show the value of the organ? In other words, where there is no suggestion that every thing is not done in perfect good faith, is the price agreed to be paid for an article, by the express terms of a valid contract of sale, deliberately entered into and so far perfected that the article has been transferred from the residence of the vendor in one State, to that of the vendee in another, and there set up and put in order for use, pursuant to the stipulations of such contract, and nothing remains to be done but formally to pass over the property on the receipt of the purchase money, when the completion of the sale is prevented by an attachment of the article by an officer, competent to be considered and weighed by a jury, in determining the value of such article at the time of its attachment? We think it must be.

We are aware that a mere offer to purchase is not competent evidence of value. But here was not a mere offer to buy. There was a valid contract of sale, deliberately made upon full consideration and correspondence, and so far executed that the defendant contended upon the trial, and still insists, that, upon the clear and undisputed facts of the case, the sale was, in point of law, absolutely complete, so as to pass the title of the property to the contracting vendee.

It may be regarded as well settled in this State, that the price paid on the sale of property, in the vicinity and about the same time, similar to that whose value is to be determined by the jury, is competent for their consideration. *White* v. *Concord Railroad*, 30 N. H. (10 Foster) 188; *Whipple* v. *Walpole*, 10 N. H. 131.

It seems to us that the price, actually and in good faith agreed to be paid for the identical property in controversy, at the very time, under a contract for its sale, deliberately and considerately entered into, partly executed, and so nearly completed, that it is a matter of serious argument whether it were not in law absolutely perfected, cannot be less competent to be weighed by a jury; not as conclusive evidence of value, but as tending to show the probable worth of the property thus contracted to be sold. Hayes testified that he sold the organ to Lawrence by letter. The letters were part of the contract of sale — part of the *res gestæ*, and as such admissible, and competent to be considered on the question of value. All the objections taken being overruled, there must be

*Judgment on the verdict.*