Rockingham, ⎫
Jan. 2, 1952. ⎭  No. 4059.

IN RE ALBERT T. MUNDY & a.

240

*Gordon M. Tiffany,* Attorney General, and *Lindsey R. Brigham* (*Mr. Tiffany* orally), for the State.

*Upton, Sanders & Upton* and *William D. Tribble* (*Mr. Robert W. Upton* orally), for the defendants.

BLANDIN, J. It is established by the weight of authority elsewhere and by our unanimous opinion in this state that the proceedings under the act here in question (Laws 1949, *c.* 314) are civil and not criminal in nature and that they offend no provision of criminal due process. See *In re Moulton,* 96 N. H. 370, 372-373, 374, and authorities cited, wherein we held this act constitutional on its face —at least so far as the constitutionality of the provisions now questioned are concerned. It follows that the defendants' exceptions so far as they rest on the assumption that this is a criminal matter are without merit. *Kemmerer* v. *Benson,* 165 F. (2d) 702 (C. C. A. 6th). Nor do we think the examining board here can be viewed as an administrative agency as the defendants also contend. The Legislature has delegated none of its powers to this board nor can it make any decision binding on others or final in any sense.

Its members act only to aid the Court by their special knowledge as do any expert witnesses.

The defendants' main objection here is that the Court, under section 5 of chapter 314 of the Laws 1949 which permits it to do so, received hearsay evidence in the form of the report of the examining board. This in turn was based to some extent upon probation and police reports which under section 4 II, the board was authorized to examine for the purpose of obtaining information from them. The defendants say this offends the due process clauses of both the State and Federal Constitutions, which are concededly substantially the same. N. H. Const., *Pt.* 1, *Arts.* XIV, XV; U. S. Const. Amend. XIV. This report consisted of (1) findings based on hearsay from different sources, and (2) the conclusions drawn from them and from personal examinations of the defendants made by the board that the defendants were sexual psychopaths. The hearsay sources referred to were probation and police reports and correspondence with the father of one of the defendants. These reports so far as material consisted of statements of the defendants and of the juveniles involved. The psychiatrist who testified at the hearing before the Court was a member of the board and he was cross-examined at will by the defendants, who were present at the hearing, through their counsel. Prior to calling the expert and pursuant to section 5 II of chapter 314, *supra,* which provides that the county solicitor "shall" subpoena witnesses "if necessary, in support of the report," one of the juveniles was called to the stand by the State. This boy was present when all the acts upon which the expert's opinion was in part founded allegedly took place. After a conference at the bench, the nature of which does not appear, he was excused and thereafter was not asked to testify although available to both sides. It appeared from the expert's testimony that his opinion rested to a substantial degree on his own examination of the defendants as well as on the reports.

That an expert may give an opinion under some circumstances based in part on hearsay in both civil and criminal cases is well established in this state. *Lebrun* v. *Railroad,* 83 N. H. 293, 301, and cases cited; *Boulanger* v. *McQuesten,* 79 N. H. 175; *State* v. *Sturtevant,* 96 N. H. 99, 104. In these cases the hearsay consisted of alleged statements of the party or matter contained in scientific articles or books. Aside from these examples, the law abounds in exceptions to the hearsay rule. It is admissible before administrative bodies here and elsewhere. *Goldsmith* v. *Kingsford,* 92 N. H.

442, 444; *National Labor &c. Board* v. *Company*, 94 F. (2d) 862, 873. See also, Laws 1949, c. 278, s. 65-g, which permits hearsay evidence in zoning cases and R. L., c. 132, ss. 9, 17, permitting such evidence in juvenile hearings. In myriad matters which come before our Public Utilities Commission, hearsay may be introduced. R. L., c. 287, s. 10; *Welch Co.* v. *State*, 89 N. H. 428, 439. Its admissibility before courts is well settled in such instances as divorce and custody proceedings—matters which affect among the most vital interests of mankind. *Pflug* v. *Pflug*, 92 N. H. 247, and cases cited; *Sheehy* v. *Sheehy*, 88 N. H. 223, 227, 228. There is no occasion to further extend citation on this subject. It is apparent from the above that the Legislature and even the courts may make valid exceptions to the hearsay rule.

That the Legislature has done so here seems to us too clear to require extended consideration. The whole purpose of this statute was to provide new and more effective methods for disposing of these cases and a step toward this end was to admit hearsay evidence in the form of the report of the examining board. Section 5 I states flatly that "such report shall be admissible as evidence." We do not believe that section 5 II, stating that the board "may be present at the hearing" and "may . . . testify as to the result of their examination and to any other pertinent facts within their knowledge," was intended to nor does qualify the prior provision (s. 5 I) as the defendants argue. Matters of opinion may be facts within the board's knowledge and in any event to hold that the Legislature would make a plain statement of its intent as in section 5 I and immediately thereafter nullify it by an ambiguous provision seems too fanciful a construction for us to seriously entertain. The probation and police reports here were available and could have been introduced by either side although it seems they would have added nothing to the expert's testimony. Now if this evidence was admissible, then the report of the board and the expert's testimony together were an adequate basis for the Court's finding that the defendants were sexual psychopaths. It also seems in view of the numerous exceptions to the rule that the fact alone that hearsay evidence was admitted is not sufficient to render the proceedings invalid.

We believe that the question here is whether under all the circumstances the exception made by section 5 of chapter 314, *supra*, violates "the very essence of a scheme of ordered liberty." *Fitzgibbons* v. *Hancock*, 97 N. H. 162, 164, and authorities cited. See also,

*Ex parte Carter,* 14 N. J. Super. 591. In late years our philosophy has undergone tremendous changes towards those who because of diseases, mental or physical or even for other causes, have become dangerous to or offenders against society. In many instances these changes have resulted in great benefits to the offenders as well as to the public. See *Williams* v. *New York,* 337 U. S. 241, and authorities cited. Even in criminal trials in the matter of sentence at least the rigidity of the rules of evidence has been relaxed. *Id.,* 248. The whole system of probation which has been tried and not found wanting "relies heavily on non-judicial implementation" of its procedures. *Williams* v. *New York, supra,* 248. The issue before us, narrow in its immediate scope but broad in its implication, comes to a matter of balancing the interest of the individual and of the society of which he is a member and from which he derives benefits. *Cf. State* v. *Hobson,* 83 A. (2d) 846, 855, 856 (Del. 1951). As Heraclitus of Ephesus said some twenty-five hundred years ago, "The major problem of human society is to combine that degree of liberty without which law is tyranny, with that degree of law without which liberty becomes license." We are faced with such a major problem here. In the case of insanity, it has long been settled that the result of the balance of such interests is that many procedures are permitted which would not be allowable under our criminal or even under all branches of civil law. Among these procedures is the right of the State to confine an insane person without giving him the right of notice or cross-examination. R. L., *c.* 17, *ss.* 11, 13, 17, 18. It is also common knowledge as well as implicit in these sections that the examining physicians and committing authorities may and do utilize hearsay evidence in reaching their conclusions. As has been previously stated, our sexual psychopath law seeks to protect and cure persons just as does our insanity law who are regarded as ill rather than criminal. Their commitment is not looked upon as a sentence or punishment. *In re Moulton,* 96 N. H. 370, 373. Not only is the sexual psychopath benefited by protection and treatment *but the finding that one is such frees him forever after from any prosecution arising out of the sex offense which resulted in the proceedings in his behalf.* Laws 1949, *c.* 314, *s.* 13. Nor is this finding final in the sense argued by the defendants. The sexual psychopath or others in his behalf may petition the court and procure his release at any time when it appears he is cured or ceases to be a menace to himself or others (*s.* 12). In this and other respects the proceedings are analogous to those in insanity cases

(*cf.* R. L., *c.* 17, *ss.* 11, 13, 17, 18, 26-28), and it has been so held unanimously by this court. *In re Moulton*, 96 N. H. 370, 372. Actually, the defendants here are given substantially greater rights. For example, the sexual psychopath has the right of notice, of a hearing at which he may be present, the right to be represented by counsel who may cross-examine, and also the right to compel the attendance of witnesses (*ss.* 4 III, 5 I). In effect, the statute which we now construe *does nothing save to expand the definition of insanity to keep pace with the discoveries of science and the changing attitude of society which rests in part on these discoveries and in part upon what experience and the years have wrought in the mind and heart of man.* "Thus time by degrees brings each several thing forth before men's eyes and reason raises it up into the borders of light." Lucretius, *De Rerum Natura.* It appears that time and reason have combined to raise to the borders of light a new concept of the true nature of such cases as we now decide. It would be a mistake for the courts as they have too often done in the past to refuse to see what this light has revealed and to act accordingly. It is true that the law should be slow to adopt so-called "liberal" reforms which under the guise of granting more liberty may destroy much of what exists. However, here we have not only science and the changed outlook of society to support us, but years of reasonably satisfactory experience under analogous insanity laws in similar situations.

In conclusion we have to weigh the great and increasing need for a remedy, the irreparable harm to society and the individual resulting from the lack of one and the seeming impossibility of solving the problem with any degree of satisfaction under existing laws. We must also consider the nature of the proceeding here, that it is not criminal nor really even an adversary civil proceeding in the ordinary sense, since the objectives here, as were stated in our unanimous opinion in the *Moulton* case (96 N. H. 370) are to "cure" and "protect" and to "benefit the person involved" (*Id.*, 373). In addition to this there is the substantial protection he receives in regard to his rights to release as well as absolute freedom from all further prosecution for his offense. To sum it up, the Legislature has said here that the State may introduce hearsay evidence to aid in establishing *prima facie* that such defendants as these are suffering from an illness which makes them dangerous to themselves and others. But these defendants may then test this by cross-examination as unlimited as in a criminal case and in addition they may compel

the State to produce at its own expense for such cross-examination, not only the persons upon whose testimony, hearsay and otherwise, the board's findings of the defendants' illness depends, but any other witnesses whose evidence they think may aid them. In the present case they chose not to avail themselves of these provisions for their benefit, nor even to cross-examine the complaining witness whom the State produced. That they chose not to avail themselves of their privileges under this section is a clear waiver of these rights. *State* v. *Ellard*, 95 N. H. 217, 222. This statute should not be held unconstitutional except on "unescapable grounds." *Chronicle &c. Pub. Co.* v. *Attorney General*, 94 N. H. 148, 151. When we view the position of the defendants here under the statute as a whole, surrounded by far more substantial safeguards than in analogous insanity cases, it seems impossible to say that we must find this remedial, civil action violates "the very essence of a scheme of ordered liberty." Rather, it seems to assure ordered liberty as required by the State and Federal Constitutions, and we hold section 5 of chapter 314 of Laws 1949 constitutional.

The defendants' final objection to the words "lack of customary standards of good judgment" (*s*. 2, *supra*) as too indefinite to support the statute need not be determined. The issue of the validity of this provision was not raised prior to the order of the Trial Court. No request for a decision in writing stating the facts found and rulings of law was made in accordance with R. L., *c*. 370, *s*. 13, and it follows that this question is not before us. This seems to dispose of all the defendants' exceptions of merit and the order is

*Exceptions overruled.*

KENISON and DUNCAN, J J., dissented: the others concurred.

DUNCAN, J. *dissenting:* I am of the opinion that the issue of the constitutionality of section 5, chapter 314, Laws 1949, is not before the court. The record does not show that the report of the examining board appointed by the Superior Court was received in evidence, and the question of whether the statutory provisions which would make such a hearsay report (*McCurdy* v. *Flibotte*, 83 N. H. 143, 146; *Laird* v. *Railroad*, 80 N. H. 58) admissible in evidence violates the provisions of the Constitution is not presented by this case. Whether the report of the board alone could be made the basis of commitment is not before us.

In this case the substance of the board's report was received in evidence through the testimony of an expert who was a member of the board. He was permitted to relate the substance of certain reports made to the board by the state police and probation departments. The reports contained extra-judicial statements attributed to certain minors who did not testify at the trial, purporting to describe conduct on the part of the defendants which prompted the criminal charges resulting in these petitions. As the opinion of the court recognizes, these hearsay statements were relied upon by the witness as a basis for his opinion that the defendants were sexual psychopaths. The testimony was received over objection by the defendants to reference by the witness to the hearsay statements and to testimony relying upon them. Subject to the defendants' exceptions the Presiding Justice ruled that "the evidence may be introduced and may be used as a part of [the witness'] opinion . . . . Under the statute it is permitted and that's what I am going to go by." No other witnesses testified, and there was no direct evidence of the facts reported to the board and assumed by the witness to be true.

The conclusion that this was not error is insupportable. No sanction for the ruling of the Trial Court is to be found in the statute. The board was charged with a duty not only to examine the defendants, but also "to obtain any additional information in their opinion necessary to ascertain whether . . . [either was] a sexual psychopath." *S.* 4 I. Section 4 III directs that facts so obtained and relied upon shall be stated in the report of the board: "any evidentiary facts necessary to support [their opinions]." Section 5 II directs that the solicitor, as counsel for the board "shall cause witnesses to be subpoenaed, if necessary, in support of the report." (*Cf. Connell* v. *Company*, 93 N. H. 244; *Parent* v. *Company*, 70 N. H. 199). By the same section, members of the board are permitted to testify to the result of their examination, and to other pertinent "facts within their knowledge."

Far from authorizing the receipt of hearsay of the character here introduced through testimony of a member of the board, the statute evidences with reasonable clarity a purpose to require the solicitor to prove any facts not within the personal knowledge of the members but necessary to the conclusions contained in their report, by independent testimony from witnesses having knowledge of such facts. It is inconceivable that the solicitor's duty was intended to be performed merely by procuring the attendance of the necessary

witnesses. The Legislature intended that they should be called to the stand as witnesses by the solicitor, and examined to the extent necessary to support the facts upon which the opinion of the board is based. Certainly it was never anticipated that defendants in proceedings such as these should offer testimony of witnesses summoned by counsel for the board "in support of the report" adverse to the defendants' interest. *Cf. s.* 5 I.

The opinion recognizes, as it must upon this record, that the opinion to which the expert witness testified depended upon the hearsay evidence. The ruling of the Trial Court makes it manifest that the finding that these defendants are sexual psychopaths is correspondingly founded upon the incompetent evidence. In this situation no justification for holding the proceedings free from error can reasonably be found.

In consequence of the error, the defendants have been deprived of rights guaranteed to them by *Art.* 15th of the Bill of Rights. They are to be deprived of their liberty for an indeterminate period upon the strength of extra-judicial, unsworn statements by witnesses against them whom they have not met "face to face." *Art.* 15th. They had no full and fair hearing, the minimum requirements of which are that a *prima facie* case should be made out against them by testimony which they may test by cross-examination. Wig., Ev., *s.* 1367. Their liberty is taken under a statute which requires that they be found victims of such abnormal compulsions "as to render [them] irresponsible with respect to sexual matters and thereby dangerous to [themselves] or to other persons" (*s.* 2 I). This is statutory language which has been held to require evidence of "an utter lack of power to control their sexual impulses . . . [so as to be] likely to attack or otherwise inflict injury . . . or other evil on the objects of their uncontrolled and uncontrollable desire." *Minnesota* v. *Probate Court,* 309 U. S. 270, 273. They have been found psychopaths although the record contains no competent evidence of dangerous irresponsibility with respect to sexual matters.

The guarantees afforded by *Art.* 15th of our Bill of Rights do not differ materially from those of the due process clause of the Fourteenth Amendment to the Federal Constitution. *State* v. *Pennoyer,* 65 N. H. 113. "[The] evidence was improperly received and . . . but for that evidence it is wholly speculative whether the requisite finding would have been made." *Bridges* v. *Wixon,* 326 U. S. 135, 156. The defendants' exception presents an error infringing upon rights guaranteed by two constitutions. See *Buchsbaum & Co.*

v. *Federal Trade Comm'n,* 153 F. (2d) 85.

It would never be thought that the evidence received at this trial could be made competent in the criminal proceedings originally brought. *State* v. *Clapp,* 94 N. H. 62, 63. Yet because the proceedings before us were civil in nature, it is said that the evidence was both admissible, and sufficient to warrant the order of commitment. I can see no justification for this view.