Nashua District Court,
No. 5495.

## STATE *v*. LUDGER GALLANT.

Argued January 4, 1967.
Decided March 29, 1967.

*George S. Pappagianis,* Attorney General and *John A. Durkin,* Attorney ( *Mr. Durkin* orally ), for the State.

*Leonard, Leonard & Prolman* ( *Mr. David M. Prolman* orally ), for the defendant.

KENISON, C.J. The defendant's first objection to the evidence of the results of the test of a sample of his blood is that it was

taken approximately one and one-half hours after his arrest. "It is only logical that the sooner after the event the specimen is taken for analysis, the more accurate will be the estimate of blood alcohol concentration at the time of the act in issue. But because it could not be or was not done immediately after the event, does that mean the result of such a chemical test is inadmissible in subsequent litigation either civil or criminal? Our courts have answered in the negative, unless there are statutory time restrictions which otherwise control. [There are no statutory time restrictions in New Hampshire]. "In reported decisions in which the issue has been raised, the lapse between the occurrence of the event and the time of taking of a specimen for analysis has ranged from one hour to four hours." Donigan, Chemical Tests and the Law 45 (The Traffic Institute — Northwestern University, 2d *ed.* 1966). *State* v. *Tripp*, 158 Me. 161; *State* v. *Cannon*, 17 Utah 2d 105. Although the principal holding in *State* v. *Sturtevant*, 96 N. H. 99 is no longer controlling in view of the decision in *Mapp* v. *Ohio*, 367 U. S. 643, it may be noted that the chemical blood test taken in that case was "about two hours after the collision." *State* v. *Sturtevant, supra* 100. See *State* v. *Davis*, 108 N. H. 45. It was held in *State* v. *Fornier*, 103 N. H. 152, 155 that blood samples are not inadmissible as a matter of law on the sole ground that they were taken some period of time after arrest. See *Schmerber* v. *California*, 384 U. S. 757. In that case it was recognized that generally the delay works in favor of the accused, although there may be extraordinary circumstances where the alcoholic content in the defendant's blood would be lower at the time of arrest than when the blood sample was taken. This goes to the weight of the evidence and not to its admissibility. *State* v. *Roberts*, 102 N. H. 414. See *Chalmers* v. *Harris Motors*, 104 N. H. 111.

The defendant's second objection to the admission of the evidence of the results of the blood test is on the ground that the analysis was not made in the laboratory until five days after the sample of blood was obtained. No cases have been called to our attention which support this contention. Although the transcript of the evidence in the district court is not before us, it appears from the reserved case that the defendant's witness testified that the five-day period "would prevent an accurate result in that there would be a chemical reaction within the sample, during this period, which would make the test results higher or lower." This

was disputed by the State's witness who testified that the five-day period "would not change the result or accuracy of the blood content finding." We do not pass on the validity of these opposing opinions because this is a matter for determination by the district court on all the evidence in the case. Under the statute ( RSA 262-A:63 ) the blood test is not conclusive and the statute provides that "evidence that there was, at the time alleged, fifteen-hundredths percent, or more by weight of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor." This same statute further specifically provides that other competent evidence may be introduced "bearing upon the question whether or not the defendant was under the influence of intoxicating liquor." RSA 262-A:63.

Under this statutory framework we cannot say as a matter of law that a laboratory analysis five days after the blood sample was obtained was inadmissible. See Erwin, Defense of Drunk Driving Cases, ch. 14 ( 2d *ed.* 1966 ). The long and short of the matter is that in this state chemical tests to determine intoxication are considered reliable. *State* v. *Reenstierna*, 101 N. H. 286. In specific cases such tests may be challenged for inaccuracy or other reasons which present questions of fact for the Trial Court. The following statement in *State* v. *Roberts*, 102 N. H. 414, 416 is pertinent: "In this state evidence does not have to be infallible to be admissible. If it is of aid to a judge or jury, its deficiencies or weaknesses are a matter of defense which affect the weight of the evidence but does not determine its admissibility. Scientific tests for intoxication should be no less trustworthy than the views of untrained laymen who have always been permitted to testify as to intoxication on the basis of sight, smell, speech and locomotion."

The final objection to the introduction of evidence of the blood test is that it was not performed in accordance with methods prescribed by the public health officer of this state as required by statute. RSA 262-A:69-i. This statute in pertinent part provides: "No chemical tests authorized by 69-a shall be considered as evidence in any proceeding before any administrative officer or court unless such test is performed in accordance with methods prescribed by the public health officer of this state." The statute is a part of the implied consent law ( RSA 262-A:69-a to RSA 262-A:69-j ) adopted by Laws 1965, *c.* 238, effective August

30, 1965. It was adopted only after considerable study, research and several public hearings by the Legislature and the Judicial Council during the period from 1961 to 1965. See Tenth Report, N. H. Judicial Council 35-39 ( 1964 ). Martin, Biochemical Testing for Alcohol of Motor Vehicle Operators in New Hampshire: The Problem of Consent, 4 N. H. B. J. 118 ( 1962 ).

As appears from the reserved case the blood test was conducted in the laboratory of the bureau of food and chemistry department of public health as required by RSA 262-A:69-i. But there was no evidence that it was "performed in accordance with methods prescribed by the public health officer of this state" as required by the same statute. In the present case the blood test was conducted on November 3, 1965 and the methods prescribed by the public health officer were not promulgated until February 8, 1966. The requirements of RSA 262-A:69-i are mandatory and not permissive. This does not mean that a minor or technical omission to comply with the statute is fatal but it does mean that a substantial compliance with the statute is a basic prerequisite to its effective operation. The major premise of the implied consent law is that it "will aid the prosecution of the guilty and the protection of the innocent." Tenth Report, N. H. Judicial Council 39 ( 1964 ). See *Schmerber* v. *California*, 384 U. S. 757. This cannot be accomplished by noncompliance with the statute which the facts of this case demonstrate. The defendant's motion to exclude the evidence of the blood test should be granted. *Otte* v. *State*, 172 Neb. 110; *Jones* v. *Forrest City*, 239 Ark. 211; Donigan, Chemical Tests and the Law 64-65 ( The Traffic Institute — Northwestern University, 2d *ed*. 1966 ).

Whether the defendant will be found innocent or guilty will depend on whether there is "any other competent evidence bearing on the question of whether the person was under the influence of intoxicating liquor" as provided in the concluding section of the implied consent law. RSA 262-A:69-j. See also, RSA 262-A:63.

*Remanded.*

All concurred.