Rochester District Court,
No. 6425.

STATE *v.* JON LAROCHELLE.

November 3, 1972.

*Warren B. Rudman,* attorney general, and *Robert V. Johnson II,* assistant attorney general (*Mr. Johnson* orally), for the State.

*Catalfo & Krans* (*Mr. H. Richard Krans* orally) for the defendant.

GRIFFITH, J. The defendant in this case was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of RSA 262-A:62 (supp.). Trial before *Cooper,* J., of the Rochester District Court resulted in a verdict of guilty. The court made written findings of fact, suspended imposition of sentence pending transfer, and reserved and transferred certain exceptions of the defendant.

Defendant was arrested on April 1, 1972, by a State trooper who took him to the Rochester police station. There he was given the *Miranda* warning and advised of his rights under the implied consent law, RSA 262-A:69-c. Defendant chose to have a breathalyzer test which was administered approximately an hour and one half after his arrest by a trooper who is a certified operator of a breathalyzer machine. A copy of the results of the test were furnished the defendant upon its completion and he was summoned to appear at the Rochester District Court on April 7, 1972. On that date he requested a continuance until April 14, 1972, to obtain counsel. This was granted and he appeared with counsel on April 14, 1972, at which time the trial was held. The report of the breathalyzer test was introduced in evidence without the presence of the certified operator.

The exceptions of the defendant all related to the validity and interpretation of RSA 262-A:69-k (supp.) added by Laws 1971, 109:1, effective July 4, 1971, which reads as follows: "Official Record of Test. Any person, who is arraigned on a charge arising under RSA 262-A:69-a, shall file notice in said court, within five days immediately following the receipt by said person of the results of any blood alcohol test administered to him, requiring the attendance of the person who took the sample for said test or of the person who conducted the test, or both. Failure to file notice shall be deemed a waiver to require their attendance at the trial, and the official report of said test issued pursuant to RSA 262-A:69-a shall be deemed conclusive evidence of the conduct and results of said test."

The defendant in this case was not informed of the above statute and it does not appear that he knew of its existence. Absent this statute the State would have produced the person who conducted the blood alcohol content test as a witness. *State* v. *Reenstierna*, 101 N.H. 286, 140 A.2d 572 (1958). The defendant argues that to offer only the written record of the test as proof of its conduct and result deprives him of the right to confront the witnesses against him. N.H. CONST. pt. I, art. 15; *State* v. *Clapp*, 94 N.H. 62, 46 A.2d 119 (1946); U.S. CONST. amend. VI; *Pointer* v. *Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965); *Douglas* v. *Alabama*, 380 U.S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074 (1965). The defendant acknowledges that the constitutional right of confrontation may be waived but argues that RSA 262-A:69-k (supp.) "deems" waiver to exist where none can validly be found under federal constitutional standards. *Johnson* v. *Zerbst*, 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938); *Humphrey* v. *Cady*, 405 U.S. 504, 31 L. Ed. 2d 394, 92 S. Ct. 1048 (1972). This argument rests upon the assumption that the statute is unconstitutional if it provides for the admission of the official test report without the production by the State of the person conducting the test.

We conclude that the statute's reference to the "official report of said test" indicates legislative reliance upon the common-law official written statements exception to the hearsay rule. Evidentiary trustworthiness is secured by the proba-

bility that public officers will discharge their duty to make accurate records. The exception is founded upon the inconvenience and expense of requiring the official's attendance under these circumstances. 5 Wigmore, Evidence *ss.* 1630-33 (3d ed. 1940); *Perry* v. *Parker,* 101 N.H. 295, 141 A.2d 883 (1958); *Ferguson* v. *Clifford,* 37 N.H. 86, 95 (1858). Statutes making official records of chemical tests admissible as evidence of their contents have regularly been held not to violate the constitutional right of an accused to confront the witnesses against him. *Commonwealth* v. *Slavski,* 245 Mass. 405, 140 N.E. 465 (1923); *Commonwealth* v. *Harvard,* 356 Mass. 452, 253 N.E.2d 346 (1969); Annot., 29 A.L.R. 289 (1924).

*Pointer* v. *Texas, supra,* relied upon by the defendant involved the use of testimony given at a preliminary hearing by an alleged accomplice of the defendant who was not present at the trial. Although the defendant was present at the preliminary hearing he was not represented by counsel and there was no cross-examination of the witness by him. *Douglas* v. *Alabama, supra,* decided at the same time, involved the use of the confession of an accomplice against the defendant when the accomplice refused to testify. The facts in *Douglas* are analogous to *State* v. *Clapp, supra,* in which our court found a violation of our State constitution.

The apparent equation of right of confrontation with the hearsay rule in these cases appeared to obstruct reform of the hearsay rule. "Despite the superficial similarity between the evidentiary rule and the constitutional clause, the Court should not be eager to equate them. Present hearsay law does not merit a permanent niche in the Constitution; indeed, its ripeness for reform is a unifying theme of evidence literature. From Bentham to the authors of the Uniform Rules of Evidence, authorities have agreed that present hearsay law keeps reliable evidence from the courtroom. If *Pointer* has read into the Constitution a hearsay rule of unknown proportions, reformers must grapple not only with centuries of inertia but with a constitutional prohibition as well." Note, Confrontation and the Hearsay Rule, 75 Yale L.J. 1434, 1436 (1966) (footnotes omitted).

Recent cases have disavowed any intention to constitutionalize the hearsay rule. *California* v. *Green,* 339 U.S.

149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970); *Dutton* v. *Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970); *Mancusi* v. *Stubbs,* 408 U.S. 204, 33 L. Ed. 2d 293, 92 S. Ct. 2308 (1972).

"While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law ... [M]erely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." *California* v. *Green,* 399 U.S. at 155-56, 26 L. Ed. 2d at 495, 90 S. Ct. at 1933-34.

In *Kay* v. *United States,* 255 F.2d 476 (4th Cir. 1958), the admission of an official record of a blood test to prove alcoholic blood content was approved as not violative of the right to confrontation. In his concurring opinion in *Dutton* v. *Evans, supra,* 400 U.S. at 95-96, 27 L. Ed. 2d at 231, 91 S. Ct. at 223, *Harlan,* J. stated: "A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant." Significantly among the examples he cites is *Kay* v. *United States, supra.*

In *Dutton* v. *Evans, supra,* the test advanced by the court is whether the evidence admitted under an exception to the hearsay rule bears such "indicia of reliability" as to provide a satisfactory basis for the trier of fact to evaluate the truth of the prior statement without confrontation of the declarant. Blood tests for alcohol either by examination of the blood or by breathalyzer are scientifically reliable (*see State* v. *Reenstierna supra*) and the progress from the meagerly trained operator in *State* v. *Roberts,* 102 N.H. 414, 158 A.2d 458 (1960), to the present case with tests by breathalyzer conducted only by a certified operator indicate a test procedure of general reliability. *State* v. *Gallant,* 108 N.H. 72, 227 A.2d 597 (1967); Watts, Some Observations on Police-Administered Tests for Intoxication, 45 N.C.L. Rev. 34, 64

(1966). We hold that this scientifically reliable evidence, gathered and recorded pursuant to a public duty and admitted under RSA 262-A:69-k (supp.), carries sufficient characteristics of trustworthiness to be safely placed before the trier of fact without confrontation of the tester. The right conferred on a defendant to require the State to produce the person who conducted the test is statutory and not required by either the State or Federal Constitution. *People* v. *Gauthier,* 28 Mich. App. 318, 184 N.W.2d 488 (1970); *United States* v. *Lloyd,* 431 F.2d 160 (9th Cir. 1970); E. N. Griswold, The Due Process Revolution and Confrontation, 119 U. Pa. L. Rev. 711 (1971).

We recognize that evidence admitted under a state-created exception to the hearsay rule may nevertheless infringe constitutional rights. *Phillips* v. *Neil,* 452 F.2d 337 (6th Cir. 1971) and dissenting opinion in *In re Mundy,* 97 N.H. 239, 245, 85 A.2d 371, 375 (1952). None of the factors which weaken the trustworthiness of the evidence reviewed in those cases are found here.

We agree that in the case of a breathalyzer test there is less opportunity for a defendant to require the State to produce the tester than in the case of an analysis of the blood. This is due to substantial delay in obtaining the chemical analysis of the blood as compared to the instant results available from the breathalyzer. However, since there is no constitutional requirement that the State produce the operator of the breathalyzer, the fact that the statute works differently in one case than in another does not make it invalid.

RSA 262-A:69-k (supp.) refers to tests pursuant to RSA 262-A:69-a (supp.) which included tests of breath to determine alcoholic content of the blood and we find no merit in the defendant's argument that the statute does not include the breathalyzer test.

It appears that the defendant in this case was offered a continuance in order to procure the attendance of the breathalyzer operator but declined the opportunity. RSA 262-A:69-k (supp.) makes the official report when admissible under the statute "conclusive evidence of the conduct and results of said test". We construe this language to make the report conclusive evidence of the conduct and results of the

test only if both the defendant and the State do not produce the operator for examination. *State* v. *Lapointe,* 81 N.H. 227, 123 A. 692 (1924). A defendant who has waived his statutory right to have the State produce the operator may still summon the operator for cross-examination and have the evidence considered on the conduct and results of the test. *See* RSA 262-A:63 (supp.); *Pike* v. *Scribner,* 101 N.H. 314, 142 A.2d 154 (1958).

The final question transferred asks which of three duplicate Blood Alcohol Report Forms was admissible as the official report. A Blood Alcohol Report For Breath Tests has been developed by the division of public health under the authority of RSA 262-A:69-i (IV) (supp.). This form consists of a white original and pink and yellow carbon copies. The form is completed and signed by the breathalyzer operator in triplicate and the yellow copy handed to the defendant. All three copies are made simultaneously and the yellow and pink duplicates as well as the white original are properly admitted as official records. 4 Wigmore, Evidence *s.* 1232, at 442 (3d ed. 1940). The machine test record, while admissible in evidence, is not the official report referred to in the statute.

*Exceptions overruled.*

GRIMES, J. dissented in part; the others concurred.

GRIMES, J., *dissenting in part:* The rule relied upon by the court is that the confrontation clause applies only when a witness is required for the production of evidence and does not apply when the requirement has been eliminated by an exception to or elimination of the hearsay rule.

I cannot read RSA 262-A:69-k (supp.) as creating a new exception to the hearsay rule which would eliminate the requirement of the person who took the sample and administered the test being present as a witness. The statute seems to me to speak most clearly in terms of waiver of an existing right. "Failure to file notice shall be deemed a waiver to require their attendance . . . ." In other words, in the absence of a waiver, their presence as witnesses is required. In fact, the court's opinion itself speaks of the right conferred by the statute. Since in the absence of a waiver their presence

is required by the statute, the confrontation clause is applicable even under the court's view of the constitutional right.

However, my differences with the court run deeper than a disagreement over the construction of the statute. They involve fundamental differences over the meaning of the constitutional right to confrontation under both Constitutions and over the extent to which we should follow the plurality opinion of *Dutton* v. *Evans, supra,* in construing the confrontation clause of our State constitution.

It is sufficient to say without prolonged discussion that I disagree with the plurality of four in *Dutton* and basically agree with the four dissenters. I also assert, for reasons which I will explain later, that the evidence admitted here does not even meet the tests laid down by the plurality in *Dutton supra.*

The right to confrontation is one of the basic safeguards of liberty. If it had not been intended that it should provide greater protection than that given by the hearsay rule as a mere rule of evidence subject to change or even elimination, there would have been no need to enshrine it in the Bills of Rights of both Constitutions. And yet under the rule adopted by the plurality in *Dutton* and this court in the case before us, this right to confrontation can be wiped out by unlimited exceptions to the hearsay rule so long as a majority of the court decides that the evidence posesses sufficient "indicia of reliability." This is an amorphous test indeed. Such a view, it seems to me, substitutes a rule of men for one of law and reduces a great safeguard to dependence upon the whims of judges.

Of course, the framers of our Constitutions were aware of the then existing exceptions to the hearsay rule, and the confrontation clause must be read in the light of these exceptions. However, I do not believe that it was ever intended that those exceptions could be extended or enlarged to permit the admission of the evidence involved here. In *California* v. *Green supra,* cited by the court, the witness was in fact present at trial and therefore confrontation at trial was not denied. Surely the *Green* case furnishes no support for the admission of the evidence here without producing the person who made the test.

The court relies upon the common-law official records

exception to the hearsay rule which is founded upon the inconvenience and expense of requiring the official's attendance, the likelihood of trustworthiness due to the official's duty to make accurate records, and the public's opportunity to correct mistakes. Although this exception has generally been held constitutional, the label "official record" must be carefully applied. To be sure, unlike the record here, such records as birth, death, marriage, deeds and similar records, open to inspection and correction and made by persons and for purposes unconnected with a criminal case bear some indicia of reliability. But the record here is of the result of a test made for the specific purpose of convicting the defendant and conducted by agents of the executive branch, the very department of government which seeks defendant's conviction. In fact it is possible that the test be administered by the very policeman who made the arrest.

The record of the results of tests of the kind involved here are not to be equated with the mere routine recordation of facts such as birth or death. Here the fact recorded is the result of a test performed by the recorder himself and involves such crucial questions as the method of analysis and the reliability of procedures. The admissibility of such tests has uniformly been conditional upon compliance with proper procedures being proved by the State. *State* v. *Reenstierna,* 101 N.H. 286, 140 A.2d 572 (1958); *State* v. *Gallant,* 108 N.H. 72, 227 A.2d 597 (1967); *State* v. *LaFountain,* 108 N.H. 219, 231 A.2d 635 (1967).

The accuracy of the test by breathalyzer depends not only upon proper procedures but also upon the proper working of the machine and the use of proper chemicals compounded to the proper percentage. The proper chemical content of the ampules used in the machine is a critical factor in the result. *State* v. *Baker,* 56 Wash. 2d 846, 355 P.2d 806 (1960).

In the case of blood tests, it is not only important that the proper test procedures be used (*State* v. *Gallant supra*) but also that it be shown to be the defendant's blood that was tested. *State* v. *Reenstierna supra.* Also in the case of blood tests, the results depend in part upon evaluation by the tester.

Both types of tests involve substantial chance for error which effective cross-examination of the person performing

the test might reveal. This is quite different than the evidence in *Dutton* where the plurality stated "the possibility that cross-examination of Williams could conceivably have shown the jury that the statement, though made, might have been unreliable was *wholly unreal.*" (Emphasis added).

Then too, the plurality in *Dutton* relied in part upon the fact that testimony in that case "does not involve evidence in any sense 'crucial' or 'devastating.'" In fact, two of the plurality thought the evidence to be so inconsequential that its admission, if error, was harmless beyond a reasonable doubt. In the case before us, the evidence is both "crucial" and "devastating". The statute makes it conclusive evidence of the results and the results by RSA 262-A:63 (supp.) are made prima facie evidence of the defendant's intoxication. With the exception of proving that the defendant was driving on a public highway, the evidence supplies all the State needs to prove guilt. Certainly the evidence involved here is unlike the evidence in *Dutton* which was stated by the plurality to be "of peripheral significance at most".

The court says that a defendant may himself call the person who made the test. But the duty to confront a defendant with witnesses falls upon the State. *Dutton* v. *Evans, supra,* dissenting opinion, footnote 4. Here the State was allowed to introduce prima facie evidence of guilt without producing witnesses.

I am also concerned with where the court's opinion leads. If a policeman's report of investigation is made an official record, may it be introduced without calling the officer as a witness? What about an autopsy report, or the report of a firearms identification expert?

The drafters of our Bills of Rights were careful to include this substantial safeguard in the Constitutions. In my judgment, we should construe it liberally in favor of the right and not seek ways to reduce it to a mere paper guarantee. I would hold that absent a valid waiver, the presence of the witnesses was constitutionally required.

There can be no valid contention that there has been a binding waiver here. The defendant was not informed about the statute, and as the court says "it does not appear that he knew of its existence".

Although the constitutional right to confrontation may be waived, such a waiver to be binding must be deliberately, understandingly and knowingly made. *Henry* v. *Mississippi,* 379 U.S. 443, 13 L. Ed. 2d 408, 85 S. Ct. 564 (1965); *Douglas* v. *Alabama,* 380 U.S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074 (1965). Presuming waiver from inaction as in this case is inconsistent with this rule. *Barker* v. *Wingo,* 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972).

Since the defendant did not know of the statute and it was not made known to him either orally or in writing at the time he received notice of the test nor thereafter until trial, he could not have knowingly and deliberately waived his right to confront the persons who took the sample and made the test.

I also am of the opinion that the statute in question will operate to deny effective assistance of counsel, especially to indigent defendants. Our State constitution, part I, article 15, provides that "this right he is at liberty to waive, but only after the matter has been thoroughly explained by the Court." This indicates that our people do not favor inadvertent or presumptive waivers of constitutional rights.

"The right to confrontation is basically a trial right." *Barber* v. *Page,* 390 U.S. 719, 725, 20 L. Ed. 2d 255, 260, 88 S. Ct. 1318, 1322 (1968). It is a matter, therefore, in which the defendant needs the "guiding hand of counsel". *Powell* v. *Alabama,* 287 U.S. 45, 69, 77 L. Ed. 2d 158, 170, 53 S. Ct. 55, 64 (1932). By requiring a defendant to make a choice within five days of receipt of the results of the tests, the decision must many times be made before defendant appears in court as in this case. There can therefore have been no waiver of counsel and in the case of an indigent, he will have had no opportunity to have counsel appointed for him. He is thereby denied the assistance of counsel with respect to an important trial right. *See Brooks* v. *Tennessee,* 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891 (1972).

I do not disagree with the basic purpose behind the statute which is to save the State from having to produce witnesses if the properly informed and represented defendant is willing to waive. But a fairer means than is provided by this statute can certainly be found to do this without infringing on two important constitutional rights.

I therefore dissent from that part of the court's opinion that deals with the admission of the report of the test, but concur in the remainder of the opinion.