Allan M. AGNEW, Petitioner-Appellant,

v.

Walter R. HJELLE, Highway Commissioner,
Appellee.

Civ. No. 8970.

Supreme Court of North Dakota.

March 27, 1974.

Christensen, Christensen & Bear, Bismarck, for petitioner-appellant.

Vernon R. Pederson, Special Asst. Atty. Gen., Bismarck, for appellee.

ERICKSTAD, Chief Justice.

This is an appeal from an order of the District Court of the Fourth Judicial District, Burleigh County, entered September 14, 1973, which affirmed an administrative order entered after hearing on July 5, 1973, revoking the driver's license of the petitioner-appellant, Allan M. Agnew (hereinafter Agnew), for refusing to submit to a breathalyzer test under the Implied Consent Law, Chapter 39–20, N.D.C. C.

Agnew was arrested June 13, 1973, for operating a motor vehicle while under the influence of intoxicating liquor. The arresting officer, Richard Tessier of the Bismarck Police Department, testified at the administrative revocation hearing conducted pursuant to Section 39–20–05, N.D.C.C., by Breen Kennelly, hearing officer, acting as agent of the appellee, Walter R. Hjelle, the State Highway Commissioner (hereinafter Commissioner), that from the patrol car in which he was following Agnew he observed Agnew driving his pickup east on Broadway in the city of Bismarck and that the pickup seemed to be moving erratically from the soft shoulder of the road to the middle of the travelled portion and back again. Tessier further testified that after observing Agnew's pickup weave from the travelled portion of the road to the shoulder and back again to the travelled portion several times, he flipped on his red light with the intention of stopping it. Officer Tessier testified that when the pickup stopped, Agnew had trouble finding his driver's license and that Agnew went through his wallet twice before finding it. The officer further testified he saw Agnew's driver's license the first time Agnew looked through his wallet, but that Agnew went by it. At this point, Tessier asked Agnew to step out of the car and walk to the rear of the vehicle, off the travelled portion of the road. Tessier testified Agnew stumbled slightly getting out of the pickup and as he walked to the tailgate area of the pickup, where he stopped to support himself by leaning against the tailgate. Agnew several times refused to perform coordination tests requested by Tessier, such as the balance test and walking a straight line heel to toe. Tessier also testified there was a strong odor of alcohol emanating from Agnew, that Agnew refused to stand free from the pickup without support, and refused to look Tessier straight in the eyes so he could use the flashlight to check his pupillary reaction. At this time Tessier informed Agnew he was under arrest for driving while intoxicated, and Agnew was placed in the patrol car and taken to the police station. On the way to the station Agnew was given the *Miranda* warnings and asked if he would consent to a breathalyzer test. Agnew would only state he wanted to speak with his attorney. Once at the station, Agnew was repeatedly asked if he would consent to the test, but he continued to maintain he would do nothing until he talked to his attorney. Agnew was allowed to call his attorney, who also happened to be the Bismarck City Prosecutor.

Tessier testified that once the City Prosecutor arrived, Agnew was given the opportunity to confer with him. It was after this conference that Tessier again requested Agnew to submit to the test, whereupon Agnew said, "No, I'm not going to take the test." Shortly thereafter Agnew was requested to walk a white line painted on the floor of the station so that the police could videotape his efforts. This Agnew also refused to do.

On cross-examination, Tessier testified he overheard the City Prosecutor tell Agnew that because he was the City Prosecutor he could neither represent nor advise Agnew. Agnew made no further request for counsel, the test was never administered, Agnew posted his own bond, and called a friend to take him home. Tessier conceded on cross-examination that the affidavit required by Section 39–20–04, N.D. C.C., was prepared by him that same evening but not signed and notarized until two days later. This affidavit was marked as an exhibit and introduced into evidence at the hearing.

Officer Udland testified he heard Tessier place Agnew under arrest, that Agnew insisted upon calling his attorney, and that Udland was present at the police station when Agnew refused to take the test.

Agnew did not testify at the hearing, on advice of counsel. The only testimony presented at the hearing was that of Tessier and Udland.

Agnew states the issues as follows:

"I. If the affidavit which puts the revocation machinery into motion is not properly sworn to, may it be used as the basis for the revocation of an individual's driver's license?

"II. If the affidavit is properly sworn to and contains material and false statements, may it be used as the basis for the revocation of an individual's driver's license?

"III. Does the fact that the appellant was misinformed as to the effect of a refusal and permitting him to have counsel, when, in fact, he did not receive counsel result in a knowledgeable refusal to take a breathalyzer test within the requirements of 39–20–05, NDCC?"

One further issue is raised in the State's brief: whether this court has jurisdiction to hear the instant appeal since the only judicial review provided for in Section 39–20–06, N.D.C.C., is an appeal from the administrative hearing to the district court. The State maintains that no review in the supreme court is authorized.

Before dealing with the issues raised by Agnew, we will address the State's jurisdictional challenge.

■ The provisions of the Administrative Agencies Practices Act, Chapter 28–32, N.D.C.C., are applicable to orders of revocation issued by the Commissioner under Section 39–20–04, N.D.C.C. In the Administrative Agencies Practices Act specific provision is made for appeals to the supreme court in cases such as the one at bar.

"28–32–21. Review in supreme court. —The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as any case tried to the court without a jury may be reviewed, except that the appeal to the supreme court must be taken within three months after the service of the notice of entry of judgment in the district court." N.D.C.C.

■ Our review of fact-questions in such cases is limited to determining whether there is substantial evidence in the record to support the hearing officer's findings of fact. Borman v. Tschida, 171 N.W.2d 757 (N.D. 1969).

Agnews's first two issues on appeal to this court, in essence, ask whether the affidavit the arresting officer submits to the Highway Commissioner pursuant to Section 39–20–04, N.D.C.C., can be used validly by the Commissioner in making a determination to revoke a driver's license, if it is not properly sworn to or if it contains false statements.

Section 39–20–04, N.D.C.C., reads in part:

"Revocation of privilege to drive motor vehicle upon refusal to submit to chemical testing.—If a person under arrest refuses to submit to chemical testing, none shall be given, but the state highway commissioner, upon the receipt of a sworn report of the law enforcement officer, forwarded by the arresting officer within five days after the refusal, showing that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license or permit to drive and any nonresident operating privilege for a period of six months; * * *"

■ Under Section 39–20–04, N.D.C.C., the police officer's affidavit must affirmatively show three elements:

1) That he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor;

2) That the person was placed under arrest;

3) That he refused to submit to the test or tests.

■ Upon the basis of such affidavit, the Commissioner must revoke a driver's license subject only to the opportunity for a prerevocation hearing and a postrevocation review. Agnew requested the prerevocation hearing pursuant to Section 39–20–05, N.D.C.C.

"Administrative hearing on request.— Upon the written request of a person whose privilege to drive has been revoked or denied the commissioner shall grant the person an opportunity to be heard within thirty days after the receipt of the request, but the request must be made within sixty days after notice of revocation or denial is given such person. The hearing shall be before the commissioner or his authorized agent in the county wherein the alleged events occurred for which the person was arrested, unless the commissioner or his authorized agent and the person agree that the hearing . . . shall be transcribed and *its scope shall cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor; whether the person was placed under arrest; and, whether he refused to submit to the test or tests.* Whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to the test or tests shall not be an issue. The commissioner or his authorized agent shall order either that the revocation or denial be rescinded or sustained." [Emphasis added.]

We see from Section 39–20–05, N.D.C.C., that the scope of review of the hearing is limited to the same three elements the affidavit must cover.

■ That the affidavit was signed without the recitation of an oral oath and that the affidavit in its preprinted part contained a statement that in addition to informing Agnew that the officer intended to determine the alcohol content of his blood by means of a breathalizer, the officer requested Agnew to submit to a test of his "blood, saliva or urine which would be done by a physician, qualified technician, chemist, or registered nurse" are immaterial. The law does not require that an oral oath be taken, nor does it require that the officer inform the arrested person of his right to "have a physician, or a qualified technician, chemist, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer." Section 39–20–02, N.D.C.C.

■ The record discloses that the hearing officer did not rely upon the affidavit of the police officer in reaching his decision to revoke Agnew's license, but that he relied upon the evidence adduced at the hearing. Thus, the issues raised by Agnew which assume that the affidavit is the basis for the revocation of his driver's license and that it somehow misled the hearing officer or prejudiced Agnew are unfounded.

After defining the scope of the administrative hearing described in Section 39–20–05, N.D.C.C., the following appears in the hearing officer's conclusions of law:

"*From the testimony received at the hearing* held for Allan M. Agnew it was found that:

"(1) Officer Tessier did have reasonable grounds to believe the person had

been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor;

"(2) Officer Tessier did arrest Mr. Agnew;

"(3) The test offered Mr. Agnew was not taken and was refused." [Emphasis added.]

Conclusions of Law of Breen Kennelly, Hearing Officer In the Matter of the Revocation of the Driving Privileges of Allen M. Agnew.

Having determined that the first two issues are without merit, we next consider the third issue, which we have earlier stated herein. It appears in this issue that Agnew is contending that he became confused as to his rights when he was first informed that he could remain silent and had a right to consult with an attorney pursuant to the *Miranda* warnings and then later was told that his driver's license would be revoked if he did not submit to a test to determine the alcohol content of his blood; that therefore he did not knowingly refuse to take such a test; and that because of that the failure to comply with the Implied Consent Law was not based upon a knowledgeable refusal.

Agnew relied upon State, Department of Highways v. Beckey, 291 Minn. 483, 192 N.W.2d 441 (1971), in support of his contention. In *Beckey* the State of Minnesota was appealing from an order of a municipal court which rescinded an order of the commissioner of highways which administratively directed the revocation of Beckey's driver's license because of his refusal to permit a chemical blood-alcohol test pursuant to Minnesota's Implied Consent Statute. Minnesota Statute 169.123, Subdivision 6, which sets forth the scope of inquiry at the Minnesota hearing, is significantly different from Section 39–20–05, N. D.C.C.

"Subd. 6. Hearing. The hearing shall be before a municipal judge, or probate judge if no municipal judge is available, learned in the law, in the county where the arrest occurred, unless there is agreement that the hearing may be held in some other county. The hearing shall be recorded and proceed as in a criminal matter, without the right of trial by jury, and its scope shall cover the issues of whether the peace officer had reasonable and probable grounds to believe the person was driving or operating a motor vehicle while under the influence of an alcoholic beverage; whether the person was lawfully placed under arrest; whether he refused to permit the test, *and if he refused whether he had reasonable grounds for refusing to permit the test; and whether at the time of request for the test the peace officer informed the said person that his right to drive might be revoked or denied if he refused to permit the test and of his right to have additional tests made by a person of his own choosing.* The municipal court shall order either that the revocation or denial be rescinded or sustained and refer such order to the commissioner of public safety for his further action." [Emphasis added.] 12A M.S. A. 169.123.

While both statutes require a showing of probable cause, arrest, and refusal to take the test, the Minnesota statute requires a determination of whether the refusal to take the test was based upon reasonable grounds, whether the officer informed the person that his right to drive might be revoked if he refused the test, and whether the officer informed the person that he had the right to have additional tests made by persons of his own choosing. On the other hand, not only does our statute not provide for such a determination, but it specifically prohibits an issue being made of whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to such a test or tests.

■ Even discounting the significant statutory differences, *Beckey* is not author-

ity for Agnew's position. In *Beckey* there was conflicting evidence on the issue of the reasonableness of the refusal in light of the possible confusion which might result when the arrested person, having been given the *Miranda* warnings, indicated he was asserting a right which he had just been told he was free to assert. The lower Minnesota court resolved the conflicting evidence, and the Minnesota supreme court stated such findings of fact were not "clearly erroneous". In the case at bar, Agnew did not testify. There is no evidence in the record which supports the assertions on appeal that Agnew was confused. We have only the uncontradicted testimony of the two officers that Agnew unequivocally refused the test.

If we were to assume for argument purposes only that Agnew's refusal was from confusion growing out of the *Miranda* warnings, *Beckey* still does not support Agnew's position since in *Beckey* the officer made no attempt to explain that the person had no constitutional right to consult with an attorney before deciding to take the test, something the Minnesota supreme court said should have been done.

"Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request is made, he has a right to choose between permitting the test or refusing the test at the risk of revocation of his driver's license." State, Department of Highways v. Beckey, 291 Minn. 483, 192 N.W.2d 441, 445 (1971).

In the case at bar Tessier testified that both he and Udland attempted to explain to Agnew that he had no constitutional right to consult an attorney regarding the taking of the test.

"Q. [Breen Kennelly] What was his answer to that?

"A. [Officer Tessier] He said he wanted to talk to his attorney. I told him that we had to have an answer on the test. We tried to explain to him that it was a non-legal question. He said he absolutely refused to do anything until he talked to his attorney. * * *" Hearing Transcript, p. 8.

The so-called "confusion doctrine" has been asserted with success under limited circumstances in California, in Rust v. Department of Motor Vehicles, 267 Cal.App. 2d 545, 73 Cal.Rptr. 366 (1968). In a later case, *Rust* is acknowledged and explained.

"Finally, appellant maintains that he was so confused concerning the taking of a chemical test that his refusal should be vitiated. While there is authority that where a driver refuses to take a test because he was confused by the *Miranda* warnings as to his constitutional rights and the demand for a test under the Implied Consent Law (see Rust v. Department of Motor Vehicles, 267 Cal.App.2d 545, 547, 73 Cal.Rptr. 366), this rule does not apply when the arresting officer explicitly informs the arrestee that the *Miranda* rights do not apply to the taking of a chemical test pursuant to the Implied Consent Law. (Reirdon v. Director of Dept. of Motor Vehicles, 266 Cal. App.2d 808, 811, 72 Cal.Rptr. 614.)

"The question whether a driver 'refused' a test within the meaning of the statute is a question of fact. (Walker v. Department of Motor Vehicles, 274 Cal.App.2d 793, 799, 79 Cal.Rptr. 433.) When there is no evidence of confusion, and where apparent confusion is not demonstrated and is not apparent to the arresting officer, no further clarification on the part of the arresting officer is required. (See Wethern v. Orr, 271 Cal. App.2d 813, 815, 76 Cal.Rptr. 807.)

"The *Rust* 'confusion doctrine' is inapplicable because the appellant does not maintain that he suffered any bewilderment as a result of the constitutional admonition. In determining whether an arrestee's refusal is the result of confusion, the crucial factor is not the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test. (Maxsted v. Department of Motor Vehicles, 14 Cal.App.3d 982, 986, 92 Cal.Rptr. 579.)" Cahall v. Department of Motor Vehicles, 16 Cal.App.3d 491, 94 Cal.Rptr. 182, 186 (1971).

See also Goodman v. Orr, 19 Cal.App.3d 845, 97 Cal.Rptr. 226 (1971).

◼ Even if we were to recognize the existence in this State of such a doctrine, which we do not, the circumstances in the instant case are not such as would bring it into play.

Having reviewed the findings of the Commissioner in light of the evidence submitted to the Commissioner, we find there is substantial evidence to support the findings of the Commissioner and that they are not contrary to law.

◼ Before we conclude our opinion, we think it proper to comment on the civil nature of an Implied Consent Statute as it relates to revocation of drivers' licenses for failure to take a chemical test to determine alcoholic content of blood. As we said in *Borman,* proceedings under the Implied Consent Law are civil in nature. Courts which have considered the question generally hold that refusing to submit to a chemical test until counsel is consulted is an unreasonable refusal, there being no right to counsel in a civil proceeding. See Rusho v. Johns, 186 Neb. 131, 181 N.W.2d 448 (1970); State v. Pandoli, 109 N.J.Super. 1, 262 A.2d 41 (1970); Blow v. Comm'r of Motor Vehicles, 83 S.D. 628, 164 N.W.2d 351 (1969); Deaner v. Commonwealth, 210 Va. 285, 170 S.E.2d 199 (1969); Ent v. State Dept. of Motor Vehicles, 265 Cal.App.2d 936, 71 Cal.Rptr. 726 (1968).

The order of the district court affirming the order of the Commissioner revoking Agnew's driver's license is affirmed.

VOGEL, TEIGEN, PAULSON and KNUDSON, JJ., concur.