James Edward LUND, Plaintiff/Appellee,

v.

Walter R. HJELLE, State Highway Commissioner, State of North Dakota, Defendant/Appellant.

Civ. No. 9034.

Supreme Court of North Dakota.

Dec. 19, 1974.

554

Norbert H. Lange, Sp. Asst. Atty. Gen., State Highway Department, Bismarck, for defendant/appellant.

Kruger & Yuill, Fargo, for plaintiff/appellee.

KNUDSON, Judge.

This is an appeal by the State Highway Commissioner from an order of the district court reversing the Commissioner's order revoking James Lund's driver's license. The Commissioner had issued an order revoking Lund's driver's license for six months for refusing to submit to a chemical test to determine the alcoholic content of his blood. Lund had appealed to the district court from the Commissioner's order.

On December 24, 1973, at approximately 8:00 p. m., Lund was involved in a single car accident. Lund phoned the Fargo Police Department, and Officer Cummings arrived at the accident scene at approximately 8:10 p. m. Observing that Lund's speech was slurred and that there was the smell of alcohol on his breath, the officer placed Lund under arrest for driving while under the influence of intoxicating liquor. Officer Cummings took Lund to St. Luke's Hospital for a chemical blood test to determine the alcoholic content of his blood, which test Lund had agreed to take, but upon arrival at the hospital Lund refused to submit to the test.

Officer Cummings then went to the police station, with Lund in custody, where Officer Cummings made his report of the accident. Lund made several telephone calls, finally contacting his insurance agent, who advised Lund to take the chemical blood test. Lund thereupon informed Officer Cummings that he would take the chemical blood test, but the officer declined to permit him to take the chemical blood

test. This request by Lund was made at approximately 9:30 p. m., about one hour after Lund's arrest at 8:30 p. m.

Lund was released on bail at approximately 9:30 or 10:00 p. m., and he then went directly to St. Luke's Hospital where he had a chemical blood-alcohol test taken. After he got home he was informed that the test could not be used because an alcohol swab had been used. Lund then walked back to the hospital where a second chemical blood-alcohol test was taken at 11:30 p. m.

Officer Cummings filed a report with the State Highway Commissioner showing that he had placed Lund under arrest as he had reasonable grounds to believe that Lund had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor and that Lund had refused to submit to a chemical test to determine the alcoholic content of his blood.

A hearing was held at Lund's request on February 4, 1974, before a hearing officer for the Highway Department, who ordered that Lund's driver's license be revoked for six months. Lund appealed to the district court, which reversed the Highway Commissioner's order on the ground:

"That the appellant had reservations about taking the blood test until he was made aware of his legal rights; that the appellant was unable to accomplish this on Christmas Eve until approximately one hour after the officer directed him to take the test; that this time lapse was occasioned by the appellant's failure to contact his attorney or other persons from whom he sought advice, notwithstanding many telephone calls; that the defendant changed his mind and agreed to submit to a blood test within a reasonable time after his refusal and after he had sought and secured advice in connection therewith and in doing so he did not discommode anyone; that the test was directed to be taken by the officer and that the appellant within a reasonable

time after the direction offered to take the test and that the officer refused to administer the same; therefore, there was no refusal on the part of the appellant to take the test;"

This appeal presents the question: Whether a first refusal by a person to submit to a chemical blood test for the purpose of determining the alcoholic content of his blood under the implied consent law may be remedied by a later consent to take the chemical blood test within a reasonable time while under the continuous custody of the police.

The statute primarily involved here is Section 39–20–04, North Dakota Century Code, which provides, in pertinent part, as follows:

"If a person under arrest refuses to submit to chemical testing, none shall be given, but the state highway commissioner, upon the receipt of a sworn report of the law enforcement officer . . . showing that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license or permit to drive and any nonresident operating privilege for a period of six months . . . .."

■ The provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D. C.C., are applicable to orders of the State Highway Commissioner revoking driver's licenses. Agnew v. Hjelle, 216 N.W.2d 291 (N.D.1974).

■ The district court's and this court's review of fact questions in cases governed by the Administrative Agencies Practice Act is "limited to determining whether there is substantial evidence in the record to support the hearing officer's findings of fact. Borman v. Tschida, 171 N.W.2d 757 (N.D.1969)." Agnew v. Hjelle, *supra,* 216 N.W.2d at 294.

The issue was whether Lund refused to submit to the test or tests. Officer Cummings testified at the hearing that Lund at first agreed to submit to a blood test, but that he changed his mind after they reached the hospital and refused to submit to the test. Lund testified that he had at first agreed, then refused, but, after making several phone calls, he changed his mind and requested the police officer to give the test to him.

 The district court found that Lund had reservations about taking the blood test until he was made aware of his legal rights and that, due to his inability to contact his attorney or others from whom to seek advice, he was unable to accomplish this until about an hour after he was directed to take the test. Such a finding, however, does not support reversal of a driver's license revocation under Chapter 39–20, N.D.C.C. Proceedings under the Implied Consent Law are civil in nature and, there being no right to counsel in a civil proceeding, refusing to submit to a chemical test until counsel is consulted is an unreasonable refusal. See Agnew v. Hjelle, *supra.*

We now arrive at the question: Whether Lund's subsequent consent to take the blood test to determine the alcoholic content of his blood cured his prior refusal to submit to such a test.

The Highway Commissioner relies upon Harlan v. State, 113 N.H. 194, 308 A.2d 856 (1973). There the plaintiff was arrested and charged with driving while under the influence of intoxicating liquor. She initially refused to submit to a breathalyzer test, provided for in the implied consent statute, because she wished first to consult with her attorney. Unable to reach her attorney, she called her husband, who suggested that she take the test. She then requested the test, but the police officer informed her that the test would not be administered because too much time (one hour) had elapsed since her initial refusal. Her license was revoked for ninety days. The court stated, at 308 A.2d 858:

"Other courts considering whether a person properly advised by the police may rescind an initial refusal to submit to an implied consent law blood-alcohol test and demand that the test then be administered have almost unanimously concluded that the test need not be administered once a substantial period has elapsed from the initial refusal. [Citations omitted.] Those few cases holding that the driver was entitled to the test after initially refusing have been based upon the driver's reasonable misunderstanding of his rights and responsibilities under the law due to statements made by the police. [Citations omitted.]

"We think that our implied consent statute like most others contemplates that the test be administered without unreasonable delay."

The court concluded that plaintiff's refusal to submit to a breathalyzer test was not cured by her offer to take the test one hour later. We do not agree with the conclusion reached by the New Hampshire Supreme Court.

In Timm v. State, 110 N.W.2d 359 (N.D. 1961), we stated, at page 364:

"The object of the Legislature in enacting Section 39–20–01 was clearly to determine the alcoholic content of the blood of persons who are suspected of operating motor vehicles upon the public highways while under the influence of intoxicating beverages."

Achievement of this object does not depend upon one of the described tests being administered immediately after arrest or immediately upon the occurrence of an event, such as an automobile accident, which gives rise to a desire to determine whether one involved in the event may have been under the influence of intoxicating liquor. There is a period of time after such an event during which the administration of a chemical test will yield an accurate indication of the alcoholic content of one's blood at an earlier time.

"Thus, from the known length of elapsed time between the taking of the specimen for analysis and the event in issue, the known rate of average elimination of blood alcohol in the average person, and the result of the chemical test in the particular case, experts in this field can arrive by the process of extrapolation at a fairly reasonable estimate of the percentage of blood alcohol in the average person at the time of a certain event if he had the quantity of alcohol in his blood as shown by the chemical test in the case on trial." R. Donigan, Chemical Tests and the Law, p. 46 (2d ed. 1966).

■ The period of time after an event during which a chemical test may be administered and which will yield an accurate indication of the alcoholic content of one's blood at an earlier time extends for several hours. In the instant case, counsel for the Commissioner conceded that a chemical test two hours after the arrest could have been extrapolated and would be accurate.

Wanna v. Miller, 136 N.W.2d 563 (N.D. 1965), was an action against a tavern owner under the Dram Shop Act. The driver of a truck which struck plaintiff was served intoxicating beverages by defendant. A specimen of the driver's blood was taken at 5:00 a. m., on October 7, 1962. He had consumed his last alcoholic drink at 9:00 or 9:30 p. m. the evening before. This court recognized the validity of a blood-alcohol test based on a specimen of blood taken approximately eight hours after the last alcoholic drink was consumed, to show what the driver's blood-alcohol level was at 10:30 p. m. on October 6, 1962, six and one-half hours prior to the taking of the blood specimen.

■ The purpose of Chapter 39–20, N.D.C.C., the Implied Consent Law, is to eliminate the drunken driver from the highways by requiring drivers suspected of operating motor vehicles while under the influence of intoxicating liquor to submit to a chemical test to determine the alcoholic content of their blood. Since the accuracy of a chemical test under Chapter 39–20 does not depend upon its being administered immediately after an arrest, accident or other event, and thus a delay for a reasonable period of time while an arrested person considers or reconsiders a decision whether or not to submit to a chemical test will not frustrate the object of the Legislature in enacting Chapter 39–20, we hold that where, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

For the reasons stated, the order of the district court is affirmed.

VOGEL, PAULSON and JOHNSON, JJ., concur.

ERICKSTAD, Chief Justice.

I respectfully dissent.

The opinion written by Justice Knudson seems to indicate that one may refuse to take the test to determine the alcoholic content of his blood and reconsider any time within a period during which the test results would be valid. Our Implied Consent Law does not so provide.

Certain sections of our Implied Consent Law are pertinent to a determination of this issue:

"39–20–01. Implied Consent to determine alcoholic content of blood.—Any

person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this chapter to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer only after placing such person except persons mentioned in section 39–20–03 under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor. The arresting officer shall determine which of the aforesaid tests shall be used.

"39–20–04. Revocation of privilege to drive motor vehicle upon refusal to submit to chemical testing.—If a person under arrest refuses to submit to chemical testing, *none shall be given*, but the state highway commissioner, upon the receipt of a sworn report of the law enforcement officer, forwarded by the arresting officer within five days after the refusal, showing that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license or permit to drive and any nonresident operating privilege for a period of six months; or, if the person is a resident without a license or a permit to operate a motor vehicle in this state, the commissioner shall deny to the person the issuance of a license or permit for a period of six months after the date of the alleged violation, subject to the opportunity for a prerevocation hearing and postrevocation review as hereinafter provided.

"39–20–05. Administrative hearing on request.—Prior to issuing an order of revocation or denial under section 39–20–04, the commissioner shall give such person a written notice of intention to revoke or deny and afford him an opportunity for a hearing. If the commissioner receives a written request within ten days, he shall grant such hearing within thirty days. The hearing shall be before the commissioner or his authorized agent in the county wherein the alleged events occurred for which the person was arrested, unless the commissioner or his authorized agent and the person agree that the hearing may be held in some other county. The hearing shall be transcribed and its scope shall cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor; whether the person was placed under arrest; and, *whether he refused to submit to the test or tests.* Whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to the test or tests shall not be an issue. The commissioner or his authorized agent shall promptly make findings of fact, conclusions, and decision, and give notice thereof, as provided for in section 28–32–13.

"39–20–06. Judicial review.—Any person aggrieved by the decision of the commissioner or his authorized agent may, within thirty days, serve and file a notice of appeal and specifications of error in the district court in the county wherein the alleged events occurred for which he was arrested or in the county in which the administrative hearing was held. It shall be the duty of the court to set the matter for hearing, and the petitioner shall give twenty days' notice thereof to the commissioner. The commissioner shall thereupon stay his decision until the hearing date but in no event for more than sixty days. Within fifteen days after receipt of the notice, the commissioner shall file in the office of the clerk of court to which the appeal is taken a certified transcript of the testimony and all

other proceedings. It shall constitute the record on which appeal shall be determined. No additional evidence shall be heard. *The court shall affirm the decision of the commissioner or his authorized agent unless it finds the evidence insufficient to warrant the conclusion reached by the commissioner.* The court may in its discretion direct that the matter be returned to the commission for rehearing and the presentation of additional evidence." Chapter 39–20, § 39–20–01, § 39–20–04, § 39–20–05, and § 39–20–06, N.D.C.C. [Emphasis added].

Because of the similarity between the statutes, facts and arguments involved in a recent decision of the Supreme Court of New Hampshire and the instant case, I shall quote extensively from it.

"The implied consent statute provides that a person arrested for operating a motor vehicle while under the influence of liquor 'shall be deemed to have given consent to a chemical test or tests of any or all or any combination of the following: blood, urine, or breath . . . .' RSA 262–A:69–a (Supp.1972); see Hallet v. Johnson, 111 N.H. 152, 276 A.2d 926 (1971). 'If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test . . ., *none shall be given*, but the director of the division of motor vehicles . . . shall revoke his license to drive . . . for a period of ninety days . . . .' RSA 262–A:69–e (Supp.1972) (emphasis added). RSA 262–A:69–c provides that the officer shall '(1) inform the arrested person of his right to have a similar test or tests made by a person of his own choosing, (2) afford him an opportunity to request such additional test, and (3) inform him of the consequences of his refusal to permit a test at the direction of the law enforcement officer.'

"Plaintiff's primary contention is that the purpose of the implied consent statute is the securing of a reliable blood-alcohol test whenever possible, and that this purpose is best served by allowing a person initially refusing to submit to the test a reasonable time after the refusal to reconsider and to then demand that the test be administered. She urges that this period for reconsideration should extend for as long a time as the test results still will be valid, which may be as long as four hours after the arrest. State v. Gallant, 108 N.H. 72, 227 A.2d 597 (1967). The State has admitted that the test would have been valid had it been administered immediately after the plaintiff requested it. But the position of the State is that the statute contemplates that once the driver has indicated his refusal to submit to the test, 'none shall be given' regardless of how soon thereafter the driver changes his mind.

"Other courts considering whether a person properly advised by the police may rescind an initial refusal to submit to an implied consent law blood-alcohol test and demand that the test then be administered have almost unanimously concluded that the test need not be administered once a substantial period has elapsed from the initial refusal. Zidell v. Bright, 264 Cal.App.2d 867, 71 Cal.Rptr. 111 (1968) (driver changed mind 30–45 minutes after refusal); Krueger v. Fulton, 169 N.W.2d 875 (Iowa 1969) (1 hour, 23 minutes); State v. Palmer, 291 Minn. 302, 191 N.W.2d 188 (1971) (1¼ hours); In re Brooks, 27 Ohio St.2d 66, 271 N.E.2d 810 (1971) (½ hour); Application of Kunneman, 501 P.2d 910 (Okl.App.1972) (driver's request to take test made as he was being placed in jail cell after refusing five requests of officer to take test); Sundstrom License, 47 Pa.D. & C.2d 1 (3 hours); see Mills v. Bridges, 93 Idaho 679, 471 P.2d 66 (1970) (under 1 hour); Dobbins v. Tofany, 38 A.D.2d 870, 328 N.Y. S.2d 1004 (Sup.Ct.1972) (within 2 hours); Donigan, Chemical Tests and the Law, 26–27 (Supp.1972). Those few cases holding that the driver was entitled to the test after initially refusing have been based upon the driver's reasonable misunderstanding of his rights and responsibil-

ities under the law due to statements made by the police. E. g., Sweeney v. Tofany, 30 A.D.2d 934, 293 N.Y.S.2d 876 (Sup.Ct.1968) (1 hour); Thomas v. Schaffner, 448 S.W.2d 319 (Mo.App.1969) (20 minutes).

"We think that our implied consent statute like most others contemplates that the test be administered without unreasonable delay. See State v. Gallant, 108 N.H. 72, 227 A.2d 597 (1967); Zidell v. Bright, *supra.* 'Clearly implied in the statute is the requirement that one of its described tests be submitted to and completed expeditiously; otherwise the purpose of the law would be frustrated.' Smith v. Cozens, 25 Cal.App.3d 300, 302, 101 Cal.Rptr. 787, 788 (1972). '[T]he testing officers should not be required "to await the driver's convenience of a different time or place" to submit to the statutory requirement.' State v. Palmer, 291 Minn. 302, 308–309, 191 N.W.2d 188, 191–192 (1971). The effectiveness and reliability of the breathalyzer as well as the blood test diminishes with the passage of time. State v. Gallant *supra*; Mills v. Bridges, 93 Idaho 679, 471 P.2d 66 (1970). There is no sound reason to give the driver the opportunity to delay the test to his benefit contrary to the purpose of the test and the statute to obtain as accurate an indication of his condition as possible. *See* Donigan, Chemical Tests and the Law 45 (2d ed. 1966); Erwin, Defense of Drunk Driving Cases § 15.03 (3rd ed. 1972); *cf.* 13 N.H. Judicial Council 45 (1970).

"We disagree with plaintiff's contention that the assistance of counsel is required prior to submitting to the test. *See generally* Donigan, *supra* at 33–35 (Supp.1972). In State v. Petkus, 110 N.H. 394, 269 A.2d 123 (1970), we ruled that the taking of a blood sample under the implied consent law is not a critical stage of a criminal proceeding requiring the assistance of counsel under the sixth and fourteenth amendments. *Cf.* Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32

L.Ed.2d 411 (1972). Plaintiff's argument that a driver is in need of counsel in deciding whether to submit to a breathalyzer test cannot be entertained in light of our decision in State v. LaRochelle, 112 N.H. 392, 297 A.2d 223 (1972).

\* \* \* \* \* \*

"We conclude that the plaintiff's initial refusal to submit to a breathalyzer test was not cured by her offer to take the test one hour later. 'We are not faced with a situation where a defendant had almost immediately retracted his refusal and had been denied the test and had been told that his belated consent was unacceptable.'" [Citations omitted]. Harlan v. State, 113 N.H. 194, 308 A.2d 856 (1973).

To permit a person charged with driving a motor vehicle while under the influence of intoxicating liquor to vacillate between not taking and taking a test to determine the alcoholic content of his blood places an additional administrative burden upon our already overburdened law enforcement officials and grants that person a luxury not contemplated by the Legislature nor justified by reason.